# Exhibit A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

ØŠÒÖ
GŒGHÁT ŒÝ ÁGÍ ÁFGŘ HÁ¸T
SŒ Õ Á¸ÚU W Ʒ VÝ
ÙWÚÒ Ü Œ ÚÁ¸ÚWÜVÁ¸ÒŠÒ ÜS
Ò ÊÁ¸ŠÒ Ö
ÔŒ ÜÒÒ ¸Á¸ ÁG HÊGÒ Êˆ J JÊ ÊÁ¸Ú Œ

IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| RENEE VIVEROS, and CHRISTINE BIAS, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>AUDIBLE, INC., a Delaware Corporation,<br><br>        Defendant. | NO.<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION; VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; AND RESITUTION/UNJUST ENRICHMENT |

Plaintiffs Renee Viveros and Christine Bias ("Plaintiffs" unless delineated otherwise) bring this action individually and on behalf of all others similarly situated against Defendant Audible, Inc. ("Defendant" or "Audible") allege, upon personal knowledge, their attorneys' reasonable investigations, and on information and belief as follows:

**INTRODUCTION**

1.      Defendant is an international media company that produces and distributes audiobooks, podcasts, and other similar media online via its website www.audible.com and mobile application (the "Audible Products") on a subscription-based business model. When consumers sign up for an Audible Product, Defendant actually enrolls them into an unlawful automatic renewal subscription program (the "Audible Subscription(s)"). Defendant markets, advertises, makes available, and sells the Audible Subscriptions through its website at www.audible.com or on its mobile application (the "Audible Platforms").

CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION; VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; AND RESITUTION/UNJUST ENRICHMENT - 1

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

2.     Defendant generates substantial revenue through its Audible Subscriptions. Indeed, Defendant's foothold in the audiobook market, and its growth in and domination thereof, is staggering. In 2018, Defendant's Audible Subscriptions accounted for $385 million in audiobook sales throughout the United States representing 41 percent of the United States audiobook market share for that year.[1] By 2022, Defendant accounted for an estimated 63.4 percent of the United States audiobook market.[2]

3.     When consumers sign up for an Audible Subscription through the Audible Platforms, which may include a discount or gift trial period, Defendant enrolls these customers into an automatically renewing subscription on a monthly or yearly basis resulting in automatic monthly or yearly charges of $7.95 up to $229.50 to consumers' credit card, debit card, or third-party account ("Billing Information") unless and until the customer cancels the Audible Subscription.

4.     Under California's Automatic Renewal Law ("ARL"), Defendant is obligated to provide clear and conspicuous disclosures about its auto-renewal practices and subscription terms prior *and* must also obtain affirmative consent to the auto-renewal scheme prior to enrolling Californians in the Audible Subscriptions. The ARL also requires that it be easy to cancel automatically renewed subscriptions through a one-step "prominently located" cancellation feature or "immediately accessible" pre-written cancellation email. If a business fails to obtain the necessary authorizations at the time of enrollment, all services provided are deemed to be unconditional free gifts under the ARL.

5.     Defendant's enrollment and cancellation practices fail to comply with the ARL. When it automatically enrolls customers in the Audible Subscriptions, Defendant fails to make required disclosures or obtain these authorizations. And Defendant's uniform cancellation

---

[1] Dimitrije Curcic, *Audible Publishing Statistics*, WORDSRATED (Jan. 10, 2023), https://wordsrated.com/audible-publishing-statistics/.

[2] *Audible Inc. – Company Profile*, IBISWORLD, https://www.ibisworld.com/us/company/audible-inc/428918/#:~:text=In%20the%20US%2C%20the%20company,than%20some%20of%20their%20peers (last accessed Apr. 24, 2023); *Supra* note 1.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION; VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; AND RESITUTION/UNJUST ENRICHMENT - 2

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   process utilizes a complex, multi-step cancellation procedure that incorporates a survey before

2   consumers can effectuate their cancellation.

3       6.      Defendant's common sign-up and cancellation process for an Audible

4   Subscription uniformly violate the core requirements of the ARL. Through the Audible

5   Platforms, Defendant markets, advertises, and sells to consumers in California, and throughout

6   the United States, paid and automatically renewing Audible Subscriptions for the Audible

7   Products. To sign up for Defendant's Audible Subscription through the Audible Platforms,

8   customers must provide Defendant with their Billing Information which Defendant then

9   automatically charges on a monthly or yearly basis without their consent. For other consumers,

10  those having a prior existing Amazon account ("Amazon Account"), Defendant unilaterally

11  charges their Amazon Account on a monthly or yearly basis without their consent. Because

12  Defendant failed to obtain consumers' affirmative consent as required by the ARL, the audiobook

13  and other media products provided to consumers were unconditional free gifts for which

14  Defendant could not legally charge. Yet, Defendant continuously represents that the automatic

15  charges are lawful and owed when they are not: by not obtaining authorizations prior to

16  enrollment, Defendant effectively agreed to gift its services. By charging for unconditional free

17  gifts through the automatic renewal scheme, Defendant unlawfully, and in violation of the ARL,

18  took Plaintiffs' and the Class's money. As a result, Defendant has enhanced its revenues and

19  Plaintiffs and the Class have suffered out-of-pocket loss and economic injury for which monetary

20  and injunctive relief is warranted.

21      7.      Specifically, Defendant systematically violates the ARL by: (i) failing to provide

22  Plaintiffs, and the Class, the complete Audible Subscription offer terms in a clear and

23  conspicuous manner and in visual proximity to the request for consent to the offer before the

24  purchase is fulfilled, in violation of ARL section 17602(a)(1); (ii) charging Plaintiffs', and the

25  Class's, Billing Information, or Amazon Account, without first obtaining their affirmative

26  consent to the Audible Subscription, in violation of ARL section 17602(a)(2); and (iii) failing to

27

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 3

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

provide Plaintiffs, and the Class, an acknowledgement that includes the automatic renewal offer terms, cancellation policy, and information explaining how consumers can cancel the Audible Subscription in a manner that is capable of being retained by the consumer, in violation of ARL sections 17602(a)(3). Finally, Defendant also failed, and continues to fail, to provide Plaintiffs, and the Class, with a "prominently located" one-step cancellation mechanism available on their account page or otherwise provide them an "immediately accessible" cancellation email, in violation of ARL section 17602(d)(1)(A)–(B).

8.      For the foregoing reasons, Plaintiffs bring this action individually and on behalf of all persons in the Class who, within the applicable statute of limitation period up to and including the date of judgment in this action, incurred fees for an Audible Subscription. Based on Defendant's unlawful conduct, Plaintiffs seek damages, restitution, declaratory relief, private injunctive relief, public injunctive relief on behalf of the general public to prevent Defendant from continuing to engage in its illegal practices (*see McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017)), reasonable attorneys' fees and costs, pursuant to California Code of Civil Procedure § 1021.5 and all other applicable law, and all other relief deemed just and equitable in the circumstances for Defendant's violation of: (1) the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (2) conversion; (3) the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; and (4) restitution/unjust enrichment. As described below, damages are not sought at this time under the CLRA.

## THE PARTIES

9.      Plaintiff Renee Viveros is a citizen of California, residing in Palm Dale, California. Ms. Viveros has standing to assert the claims set forth herein. By way of the acts and conduct of Defendant described herein, Ms. Viveros was harmed, injured, and suffered out-of-pocket loss.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION; VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; AND RESITUTION/UNJUST ENRICHMENT - 4

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

10.     Plaintiff Christine Bias is a citizen of California, residing in La Habra, California. Ms. Bias has standing to assert the claims set forth herein. By way of the acts and conduct of Defendant described herein, Ms. Bias was harmed, injured, and suffered out-of-pocket loss.

11.     Defendant Audible, Inc. is a Delaware corporation with its principal place of business in New Jersey. Defendant is an affiliate of Amazon.com. Defendant markets to consumers through the Audible Platforms. Defendant is also responsible for the promotion, advertisement, and marketing of the automatically renewing Audible Subscription on audible.com and amazon.com, among other places, where it markets and sells its Audible Subscription and Audible Products. Defendant sells its Audible Subscription throughout this state, and throughout the United States, at all times during the Class Period. Defendant also made its Audible Subscription offers to Californian consumers, and throughout the United States, online via the Audible Platforms during the class period. Defendant's online Audible Subscription enrollment process and cancellation procedures imbedded in the Audible Platforms by Defendant are the same in all material respects for consumers in California as they are for consumers in other states.

12.     Defendant markets its Audible Products under the "Audible" name, logo, and banner. *See, e.g.*, www.audible.com. The Audible website and mobile application provide, through the Audible Platforms, consumers a license to audiobooks and other related products. *See, e.g.*, www.audible.com/about/our-company. The audio recordings, information, and data are downloaded and can be saved by the consumer in tangible form.

13.     Plaintiffs reserve the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, parent, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and unlawful conduct alleged herein.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION; VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; AND RESITUTION/UNJUST ENRICHMENT - 5

**Tousley Brain Stephens PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction under the Washington Constitution, Article IV, Section 6, and RCW 2.08.010.

15.     Jurisdiction and venue are proper in this Court pursuant to the forum selection clause that is incorporated by reference in Audible's Conditions of Use. In pertinent part, the parties agree that claims and disputes related to Audible's services are subject to Amazon.com's Conditions of Use, which provide that "[a]ny dispute or claim . . . will be adjudicated in the state or Federal courts in King County, Washington, and [the parties] consent to exclusive jurisdiction and venue in these courts."

## CALIFORNIA LAW APPLIES

16.     Defendant's Conditions of Use incorporates, by reference to Amazon.com's Conditions of Use, a choice of law provision designating the application of Washington law. Defendant's choice of law provision is unenforceable and unconscionable because that term requires Plaintiffs and the Class to waive the fundamental protections afforded to them under the ARL, UCL, and CLRA relief under California law. The ARL, UCL, and CLRA represent fundamental policies of the State of California that cannot be waived by contract.

17.     California's ARL, the CLRA, and UCL are fundamental policies of the State of California that cannot be waived by contract. *See King v. Bumble Trading, Inc.*, 393 F.Supp.3d 856, 867–69 (N.D. Cal. 2019) (holding the ARL represented a fundamental policy of California); *Kissel v. Code 42 Software*, SACV 15-1936-JLS (KESx), 2016 WL 7647691, at *5 (C.D. Cal. Apr. 14, 2016) (same); Cal. Civ. Code § 1751 ("[a]ny waiver by a consumer of the provisions of [the CLRA] is contrary to public policy and shall be unenforceable and void."); *Pro Water Solutions, Inc. v. Angie's List, Inc.*, No. 2:19-cv-08704-ODW (SSx), 2021 WL 4288520, at *11 (C.D. Cal. Sept. 21, 2021) (finding the UCL to embody a fundamental policy of California which would be frustrated by enforcement of Indiana choice of law provision). Notably, Washington does not have an automatic renewal law at all that could be applied to Plaintiffs' and the Class's

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 6

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

claims nor does the Washington Consumer Protection Act prohibit "unlawful" acts for which there is a private claim for relief as does California's UCL. *Compare* Wash. Rev. Code § 19.86.010 *with* Cal. Bus. & Prof. Code § 17200. Therefore, Plaintiffs and the Class cannot bring their ARL claim under the WCPA.

18.     As alleged below, Plaintiffs, as with the Class, were not provided with the ARL's required pre-purchase and post-purchase disclosures and information for the Audible Subscription, Defendant did not obtain their affirmative consent to the automatically renewing Audible Subscription, and they were not provided a "prominently located" one-step cancellation button or an "immediately accessible" cancellation email in violation of the ARL's core requirements. Nevertheless, Defendant unilaterally and automatically charged Plaintiffs' and the Class's Billing Information or Amazon Account on a recurring basis for the Audible Subscription, in violation of the ARL, for products that were unconditional free gifts by operation of law. *See* Cal. Bus. & Prof. Code § 17603.

19.     Plaintiffs and the Class have not waived, and cannot waive, the protections afforded to them under the ARL, CLRA, and UCL for Defendant's unlawful conduct and illegal charging of their Billing Information or Amazon Account. Pursuant to the aforementioned statutes and rights, Defendant's conduct directed against Plaintiffs, the Class, and the general public of California is not to be judged under Washington law but under California law.[3] And, as such, Defendant's choice of law provision is unenforceable and unconscionable.

//

//

//

//

---

[3] Because California law applies, the pre-dispute jury waiver provision that is also incorporated into Defendant's Conditions of Use, by reference to Amazon's Conditions of Use, is equally unenforceable. *In re Cnty. of Orange*, 784 F.3d 520, 532 (9th Cir. 2015) ("California law holds, as a matter of public policy, that a litigant cannot waive its right to a jury trial by entering into a contract that contains a pre-dispute jury trial waiver clause.").

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 7

**FACTUAL ALLEGATIONS**

**I.      Background on the Subscription and Automatic Renewal e-Commerce Industry.**

20.      The e-commerce subscription business model centers on retailers providing goods or services "in exchange for regular payment from the customer."[4] Subscription e-commerce has grown rapidly in recent years. According to Forbes, "[t]he subscription e-commerce market has grown by more than 100 percent a year over the past five years, with the largest retailers generating more than $2.6B in sales in 2016, up from $57.0M in 2011."[5] This tremendous growth of subscription e-commerce shows no signs of slowing. Over the last 8.5 years, the subscription economy has grown more than 400 percent.[6] The production, sale, and distribution of subscription-based products and services is a booming industry that has exploded in popularity. UBS analysts predict that the subscription economy will expand into a $1.5 trillion market by 2025, up from $50 billion in 2020,[7] implying an 18 percent annual growth rate and making the subscription economy "one of the fastest-growing industries globally."[8] The dramatic growth was experienced "across many areas, including e-commerce, video, streaming, gaming, [and] cloud-based applications[.]"[9] Indeed, in 2021, consumers, on average, spent $273 per month on subscription services, up from $237 in 2018.[10]

---

[4] Sam Saltis, *How to Run an eCommerce Subscription Service: The Ultimate Guide*, CORE DNA (May 19, 2020), https://www.coredna.com/blogs/ecommerce-subscription-services.

[5] Louis Columbus, *The State of the Subscription Economy, 2018*, FORBES (Mar. 4, 2018, 5:02PM EST), https://www.forbes.com/sites/louiscolumbus/2018/03/04/the-state-of-the-subscription-economy-2018/?sh=49eadd8653ef.

[6] Mary Meisenzahl, *Taco Bell's Taco Subscription is Rolling out Nationwide – Here's How to Get it*, BUSINESS INSIDER (Jan. 6, 2022), https://www.businessinsider.com/taco-bell-subscription-launching-across-the-country-2022-1.

[7] Sundeep Gantori et al., *Investing in Digital Subscriptions,* UBS, 4–5 (Mar. 10, 2021), available at https://www.ubs.com/global/en/wealth-management/our-approach/marketnews/article.1525238.html.

[8] *Id.* at 5.

[9] *Id.* at 3.

[10] WEST MONROE, *The State of Subscription Services Spending* (Aug. 2021), https://www.westmonroe.com/perspectives/report/the-state-of-subscription-services-spending.

21.    As with Defendant's Audible Subscriptions, subscriptions have become so prevalent, in no small measure, because they provide companies with stable and enormous profits. Companies with subscriptions have seen their financial positions dramatically improve because of the stability and strong cash flow generated by their subscribers. Simply put, subscriptions make money. According to Intuit, subscriptions are "217% more profitable for businesses than a one-time payment model."[11]

22.    And the expansion of the subscription e-commerce model "is just getting started."[12] As USB analysts explained: "We're now in the subscription era, and the pandemic [has] accelerat[ed] its takeover. During the COVID-19 lockdowns, many digital-based subscription business models fared well due to their promise of convenience and strong business continuity."[13] The *Washington Post* reported that "[s]ubscriptions boomed during the coronavirus pandemic as Americans largely stuck in shutdown mode flocked to digital entertainment[.] . . . The subscription economy was on the rise before the pandemic, but its wider and deeper reach in nearly every industry is expected to last, even after the pandemic subsides in the United States."[14]

23.    Audible Subscriptions have generated incredible revenue for Defendant. In 2018, Defendant's Audible Subscriptions accounted for $385 million in audiobook sales throughout the United States representing 41 percent of the United States audiobook market share for that year.[15] By 2022, Defendant accounted for an estimated 63.4 percent of the United States

---

[11] Intuit QuickBooks Blog, *Subscription Model or One-Time Sale: Which Should you Choose?* (Jan. 31, 2017), https://quickbooks.intuit.com/in/resources/running-a-business/subscription-model-one-time-sale/.

[12] *Supra* note 7 at 5.

[13] *Id.*

[14] Heather Long & Andrew Van Dam, *Everything's Becoming a Subscription, and the Pandemic is Partly to Blame*, THE WASHINGTON POST (June 1, 2021, 1:12 PM), https://www.washingtonpost.com/business/2021/06/01/subscription-boom-pandemic/ (noting that "e-commerce and entertainment subscriptions to sites such as Netflix, Hulu and Disney Plus made headlines during the pandemic for soaring growth.").

[15] *Supra* note 1.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 9

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

audiobook market;[16] an increase in market share of nearly 55 percent since 2018.[17] And  the growth of the audiobook market place, and by proxy Defendant's market share, shows no signs of slowing. In 2022, globally, the audiobook market was worth $5.3 billion, or approximately 3.82 percent market share of the overall book market, which is projected to reach $35 billion, or 21.39 percent market share of the overall book market, by 2030.[18]

24.     Although the subscription model is easy to enter, and can produce high profits, it is incredibly difficult to dominate the e-commerce subscription market because of the "highly competitive prices and broad similarities among the leading players."[19] In particular, businesses struggle with high churn rates and consumer cancellation when "services don't deliver superior end-to-end experiences."[20] Consumers, however, when confronted with the recurring nature of the service, billing practices, or unclear or complicated cancellation policies, "lose interest" or "may be too harried to take the extra step of cancelling their membership[s]."[21] In other words, businesses realized that the "real money is in the inertia."[22] To facilitate consumer inertia, subscription-based e-commerce companies "work with third-party vendors to implement more manipulative designs."[23] That is, companies engaging in subscription-based e-commerce "are now taking advantage of subscriptions in order to trick users into signing up for expensive or

---

[16] *Supra* notes 1, 2.

[17] *Supra* note 1.

[18] Dimitrije Curcic, *Audiobook Statistics* (Feb. 22, 2023), https://wordsrated.com/audiobook-statistics/.

[19] Tony Chen et al., *Thinking Inside the Subscription Box: New Research on E-Commerce Consumers*, MCKINSEY & COMPANY (Feb. 9, 2018), https://www.mckinsey.com/industries/technology-media-and-telecommunications/our-insights/thinking-inside-the-subscription-box-new-research-on-ecommerce-consumers.

[20] *Id.*

[21] Amrita Jayakumar, *Little-Box Retailing: Subscription Services Offer New Possibilities to Consumers, Major Outlets*, WASHINGTON POST (Apr. 7, 2014), https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/f68135b6-a92b-11e3-8d62-419db477a0e6_story.html.

[22] *Id.*

[23] Zoe Schiffer, *A New Study from Princeton Reveals how Shopping Websites use 'Dark Patterns' to Trick you into Buying Things you Didn't Actually Want*, BUSINESS INSIDER: INDIA (June 26, 2019, 4:46 IST), https://www.businessinsider.in/tech/a-new-study-from-princeton-reveals-how-shopping-websites-use-dark-patterns-to-trick-you-into-buying-things-you-didnt-actually-want/articleshow/69950666.cms.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 10

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

recurring plans. They do this by [among other things] intentionally confusing users with their [website or] app's design and flow, by making promises of 'free trials' that convert after only a matter of days, and other misleading tactics," such as failure to fully disclose the terms of the automatic renewal or continuous service programs.[24]

25.    E-commerce businesses deliberately design the process to make consumer cancellation confusing and onerous. Once enrolled, "[o]ne of the biggest complaints consumers have about brand/retailers is that it's often difficult to discontinue a subscription marketing plan."[25] As such, "the rapid growth of subscriptions has created a host of challenges for the economy, far outpacing the government's ability to scrutinize aggressive marketing practices and ensure that consumers are being treated fairly[.]"[26] Thus, although federal regulators have sought to make it harder for companies to trap consumers in subscriptions, draining their bank accounts, and have attempted to respond to the proliferation of abuses,[27] widespread utilization of "dark patterns" and deliberate attempts to obfuscate cancellation persist. Indeed, as the Consumer Financial Protection Bureau recently reported, consumers across the country have submitted complaints "about being repeatedly charged for services they did not intend to buy or no longer want[ed] to continue purchasing" and "about the difficulty of cancelling subscription-based services and about charges made to their credit card or bank account after they requested cancellation."[28]

//

---

[24] Sarah Perez, *Sneaky Subscriptions Are Plaguing the App Store*, TECHCRUNCH (Oct. 15, 2018, 3:21 PM), https://techcrunch.com/2018/10/15/sneaky-subscriptions-are-plaguing-the-app-store/.

[25] Rich Meyer, *The Problem with Subscription Marketing*, NEW MEDIA AND MARKETING (Mar. 17, 2019), https://www.newmediaandmarketing.com/the-problem-with-subscription-marketing/; *supra* note 14 ("'Subscription services are a sneaky wallet drain,' said Angela Myers, 29, of Pittsburgh. 'You keep signing up for things and they make it really hard to cancel.'").

[26] *Supra* note 14.

[27] *Id.*

[28] Consumer Financial Protection Circular 2023-01, *Unlawful Negative Option Marketing Practices*, 2 (Jan. 19, 2023), Circular 2023-01 Unlawful negative option marketing practices (consumerfinance.gov).

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 11

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

## II.      Online Consumer Complaints About the Audible Subscription.

26.      Defendant has profited handsomely from its implementation of dark patterns into its deceptive, and unlawful, automatic renewal scheme. Dark patterns are tricks e-commerce businesses use to make consumers act, such as unwittingly subscribing to an automatic renewal, or not act, such as cancelling subscriptions they no longer want.[29] Defendant has been using various types of dark patterns, including but not limited to "forced continuity"[30] to enroll consumers into Audible Subscriptions. E-commerce businesses, like Defendant, use dark patterns to reduce customer churn—*i.e.*, retain customers—or mislead consumers into signing up for an automatic renewal in the first place. Defendant's conduct has drawn the attention and ire of customers across the country, with a number of consumers, for example, leaving scathing reviews on the Better Business Bureau website complaining of Defendant's unclear billing practices and cancellation policy:[31]

| | Initial Complaint 01/05/2023 | Complaint Type: Billing/Collection Issues Status: Resolved ✔ |

I signed up for a TRIAL subscription from Audible in December, 2021. The trial subscription was to cost $5.95 per month for a period of three months. I cancelled this subscription after one month. HOWEVER, Audible began billing my credit card $14.95 for a service I did NOT sign up for. I called Audible to cancel and was told that I would NOT be receiving any more bills from them. HOWEVER, since January 2022 I have continued to receive a credit card charge from Audible for $14.95. Each of these monthly charges has been disputed and adjusted by my credit card company, citi ***** Even though I removed my credit card from the Amazon (parent company) website, Audible continues to bill my credit card - last charge was january, 2023. Calling Audible has failed to remove this monthly charge. Therefore, I seek assistance using BBB to try to resolve this issue. thank you.

| | Initial Complaint 10/06/2022 | Complaint Type: Billing/Collection Issues Status: Answered ✔ |

Audible has charged my bank for a subscription 10/05/2022 that I had canceled in September 2022 and I did not Subscribe after I canceled it.

---

[29] *What is Deceptive Design*, DECEPTIVE DESIGN, https://www.deceptive.design/ (last accessed Feb. 23, 2023); *see also The Dark Side of UX Design*, UXP² DARK PATTERNS, https://darkpatterns.uxp2.com/ (last accessed Feb. 23, 2023).

[30] Muzammil K, *UX Common Dark Patterns and How to Avoid Them*, AALPHA (July 7, 2022), https://www.aalpha.net/blog/ux-common-dark-patterns-and-how-to-avoid-them/ ("orced continuity is another manipulative pattern that stimulates the user to start a free trial by submitting personal details such as card detail.") (last accessed Apr. 24, 2023); *see also Forced Action*, DECEPTIVE DESIGN, https://www.deceptive.design/types/forced-action (last accessed Apr. 2023).

[31] *Customer Reviews: Audible*, BETTER BUSINESS BUREAU, https://www.bbb.org/us/nj/newark/profile/digital-media/audible-0221-7000151/customer-reviews (last accessed Mar. 22, 2023); *Customer Complaints: Audible*, BETTER BUSINESS BUREAU, https://www.bbb.org/us/nj/newark/profile/digital-media/audible-0221-7000151/complaints (last accessed Mar. 22, 2023).

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 12



**Initial Complaint**
11/15/2022

**Complaint Type:** Problems with Product/Service
**Status:** Answered

I had signed up for a free trial with audible and have tried to cancel numerous times, but due to how complicated Amazon makes quitting subscriptions, I have failed to cancel numerous time and have been charge 3 payments of **** over the past couple months for a subscription that I never used. I feel that I am owed a full refund for the membership I never used and also due to failing to cancel due to Amazon's complicated and shady business practices that make it harder to cancel memberships. Amazon makes their subscriptions harder to cancel on purpose so customers will fail to cancel and pay for subscriptions that they don't want. I have not used this subscription outside of free credits that were used during a trial period, thus I received nothing for what I paid for and was basically tricked into subscribing longer than my trial period because of Amazon's shady business practices that are only used to get more money out of customers.



**Initial Complaint**
11/06/2022

**Complaint Type:** Problems with Product/Service
**Status:** Resolved

Audible makes the process of cancelling impossible. Twice I have cancelled via the online channels and both times, they continued to charge me like nothing happened. The first time, I assumed I didn't do something right, but the second time I had a second person confirm that it went through. Then, a couple weeks later I got charged again. Suddenly customer service is saying cancellations can ONLY be handled over the phone... which is not legal under ********** law (where I live). I just want my money back and to be done with this.



**Initial Complaint**
10/24/2022

**Complaint Type:** Problems with Product/Service
**Status:** Answered

My bank account continues to be charged for Audible even though I have never signed up for the service. Because we didnt sign up, we can provide none of the information Audible *************** asks for, so they say they cannot cancel the subscription. They want us to give them the email address to whomever has signed up using our bank information. None of our emails are recognized as the email linked to this mysterious account. They suggested we cancel our card, which we have done no fewer than three time, and we just got billed again for the service. We do not know what to do to stop this subscription we never signed up for. We cannot afford any extra charges to our account.



**Blake S**
⭐☆☆☆☆
03/05/2023

FALSE CLAIMS. I am the most tight-assed person when it comes to canceling free trials. so I KNOW I didn't agree to one. apparently Amazon Prime + audible is no perk anymore but from APRIL 2020 they've been charging me $15 a month.... $500+ later I am going through our lesser used credit cards and i see this *******... I'm livid.



**Lauren A**
⭐☆☆☆☆
02/25/2023

Disappointed in how shady Audible clearly is. I didn't think they would use these tactics... I cancelled my account last year after using the app for about a year. The other day I was browsing the books you could buy if you had an account, just browsing, then went to bed. Today I opened audible to listen to a book in my library and saw I had one credit available and it showed a date for my next credit to my account. I never clicked on a trial never looked at anything regarding a trial, I didn't approve ANYTHING. I called customer support and was told I signed up for a free trial. I did not. Thankfully I pay attention. What bothers me is that even with my account CANCELLED the company clearly kept my information if it started my account without being prompted or asked for credit card info. So ******. So shady. So disappointed in a company I thought was not full of sh*t. The customer service rep was nice enough I will say and quickly cancelled the trial I did not ask for. I would have liked an apology but I know she did not make the shady app. Overall takeaway: Lots of book options with decent narrators. HOWEVER, beware of random charges you do not approve and stay on top of your account if you want to try this app.Date of incident:02/24/23-02/25/23



**Glenn B**
⭐☆☆☆☆
11/24/2021

They make it nearly impossible to cancel free trail. It is very hard to find cancellation part of site. No number or contact listed. When you find Cancel it flips you back to page that says you have a credit are you sure. But it will not be cancel! I finally found a number that had long recordings then dropped you!!!Had to call several time. You cant cancel on app or the web site!!!! Beware!

on file, therefore they took the money via Amazon now that is for right, since the customer did not leave a card for audible at least an email should be sent people work too hard in this country to be taken advantage of by mega Billionaires

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 13

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27



27.     Irate customers have written biting complaints on other consumer review boards such as Site Jabber.[32]

---

[32] *Audible*, SITE JABBER, https://www.sitejabber.com/reviews/audible.com (last accessed Mar. 22, 2023).

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 14

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

28.     Defendant acknowledges and responds to some of the consumer complaints left on the Better Business Bureau website.[33] Thus, Defendant cannot claim a lack of awareness of the fact that its unlawful conduct has caused financial injury to California consumers.

29.     The above reviews are just a small sampling of numerous complaints consumers have left about the Audible Subscription regarding Defendant's missing, vague, ambiguous, and/or inconspicuous Audible Subscription offer terms and other deceptive practices.[34] The above online consumer complaints reveal a widespread pattern of uniform unlawful conduct by Defendant, underscoring the artifice devised and employed by Defendant to lure thousands of consumers bilking them for unauthorized and unwanted monthly fees, as well as delaying or hindering the ability to promptly cancel. To the extent online complaints originate outside of California, Defendant's unlawful and incomplete disclosure of the Audible Subscription offer terms and unclear billing practices are the same for all consumers. At all relevant times, Defendant's subscription and cancellation policies and procedures have been common in all material respects for consumers in California and other states. As such, California consumers were and are subjected to Defendant's insufficient and misleading Audible Subscription enrollment and billing practices in the same manner as expressed in the above-referenced consumer reviews and complaints.

**III.    California's Automatic Renewal Law.**

30.     In 2010, the California Legislature enacted the Automatic Renewal Law ("ARL") with the express intent to "end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Cal. Bus. & Prof. Code § 17600.

---

[33] *Complaints*, *supra* note 31.

[34] *Supra* notes 31, 32; *see also Audible*, TRUST PILOT, https://www.trustpilot.com/review/www.audible.com?page=2&sort=recency (last accessed Mar. 22, 2023); *Audible: Reviews & Complaints*, COMPLAINTS BOARD, https://www.complaintsboard.com/audible-b108735 (last accessed Mar. 22, 2023).

CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION; VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; AND RESITUTION/UNJUST ENRICHMENT - 15

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

31.    The ARL makes it "unlawful for any business that makes an automatic renewal or continuous service offer to a consumer in this state to do any of the following:"

(1) Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or, in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer. If the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial.

(2) Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time.

(3) Fail to provide an acknowledgement that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services.

Cal. Bus. & Prof. Code §§ 17602(a)(1)–(3).

32.    In July 2022, California Assembly Bill 390 ("AB 390") amended the ARL to require e-commerce sellers, doing businesses in California, to provide one of two specific, one-step "exclusively online" mechanisms to immediately cancel an automatic renewal or continuous service agreement offered online. Section 17602(d) provides in relevant part:

. . . a business that allows a consumer to accept an automatic renewal or continuous service offer online shall allow a consumer to terminate the automatic renewal or continuous service *exclusively online, at will, and without engaging any further steps that obstruct or delay* the consumer's ability to terminate the automatic renewal or continuous service immediately. The business shall provide a method of termination that is online in the form of either of the following:

(A) A *prominently located* direct link or button which may be located within either a customer account or profile, or within either device or user settings.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION; VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; AND RESITUTION/UNJUST ENRICHMENT - 16

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

B) By an *immediately accessible* termination email formatted and provided by the business without additional information.

*Id.* §§ 17602(d)(1)(A)–(B) (emphasis supplied). AB 390's legislative history confirms that the public policy of the State of California is to provide an immediate, one-step mechanism to cancel online automatic renewals and continuous service agreements and prohibit mechanisms designed to hinder, delay, or otherwise conceal or complicate that process. The purpose of AB 390 was to "protect consumers from unexpected and unwanted charges for automatic renewal or continuous services . . . by allowing a consumer to cancel an automatic renewal or continuous service online, at will, and without onerous cancellation requirements."[35] In support of AB 390, its author, assemblymember Marc Berman, stated: "Unfortunately, many businesses use a variety of tactics to make cancelling subscriptions inconvenient, confusing, time consuming, or otherwise difficult. . . . AB 390 would ensure that if consumers can subscribe online, they can cancel online, and that they can do so without delay or having to jump through hoops."[36] For example, some of the cancellation mechanisms AB 390 intended to eliminate were the use of online chat boxes "or the filling out of surveys as a prerequisite to effectuate a cancellation."[37]

33.     An "automatic renewal" means any "plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term." *Id.* § 17601(a). Additionally, the phrase "automatic renewal offer terms" is defined as "the following clear and conspicuous disclosures: (1) That the subscription or purchasing agreement will continue until the consumer cancels. (2) *The description of the cancellation policy that applies to the offer*. (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic

---

[35] Assembly Committee on Privacy and Consumer Protection, Assembly Bill Policy Committee Analysis AB 390, 3 (Apr. 12, 2021), available at:
https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=202120220AB390.

[36] *Id.* at 4.

[37] Supporting statement from the Office of the District Attorney of Santa Cruz County. *Id.* at 8–9.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 17

renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount of which the charge will change, if known. (4) *The length of the automatic renewal term* or that the service is continuous, unless the length of the term is chosen by the consumer. (5) the minimum purchase obligation, if any." *Id.* § 17601(b)(1)–(5) (emphasis supplied).

34.     A "continuous service" means any "plan or arrangement in which a subscription or purchasing agreement continues until the consumer cancels the service." *Id.* § 17601(e).

35.     The ARL defines "clear and conspicuous" or "clearly and conspicuously" to mean "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." *Id.* § 17601(c).

36.     Finally, where a "business sends any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer's affirmative consent[,]" the product is "deemed an unconditional gift to the consumer[.]" *Id.* § 17603.

37.     Defendant's Subscription systematically violates Section 17602(a)(1), 17602(a)(2), 17602(a)(3) and 17602(d) of the ARL.

38.     The Audible Products sold to Plaintiffs and the Class in the Audible Subscription constitute goods, services, merchandise, and products for personal or household use. The content and products including images, videos, audio, instructions, and text for which Defendant unlawfully charged Plaintiffs' and the Class's Billing Information, are all able to be downloaded, printed out, retained, or used in physical, tangible form by the consumer. Because of Defendant's noncompliant automatic renewal, the Audible Products were unconditional free gifts for which Defendant should not have charged Plaintiffs, and the Class, thereby causing economic injury to Plaintiffs and the Class. As no charge should have been imposed, and the Audible products were

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 18

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  considered unconditional free gifts, Plaintiffs and members of the Class overpaid for Audible
2  products by the amount of the charge.

3  **IV.    Defendant's Audible Subscription Enrollment Process.**

4          39.     At all relevant times, Defendant offered, via the Audible Platforms, its Audible
5  Subscriptions for the Audible Products online. Defendant's Audible Subscriptions are offered on
6  a recurring monthly or yearly basis and automatically renew at the end of the renewal period
7  unless and until the consumer cancels. For example, customers who sign up for a monthly
8  Audible Subscription are automatically renewed and typically charged the full amount for the
9  next month and every month thereafter if they do not cancel. Defendant's Audible Subscriptions
10  constitute automatic renewals or continuous service agreements under the ARL. *See* Cal. Bus.
11  Prof. Code §§ 17601(a), (e).

12          40.     Defendant enrolls consumers into the Audible Subscription through the Audible
13  Platforms, *i.e.*, either through Defendant's website or mobile application. Defendant provides
14  monthly and yearly plans for its Audible Subscriptions. Consumers who purchase an Audible
15  Subscription through the Audible Platforms are automatically enrolled by Defendant by default.

16          41.     Defendant's enrollment process for the Audible Subscriptions is substantially the
17  same, regardless of the medium used and location of the consumer. Before being enrolled into
18  an Audible Subscription, sometimes after selecting a gift period, consumers are prompted to
19  create an account. Consumers are then directed to the "Add Card" page on which the prospective
20  customer must enter their Billing Information and, as shown below, click the "Try for $0.00"
21  button to complete the transaction (or the "Check Out" page). Under the ARL, the terms of
22  Defendant's complete Audible Subscription offer terms must appear clearly and conspicuously,
23  and within visual proximity to the "request for consent to the offer." They do not. Defendant's
24  actual disclosures for the Audible Subscription on the "Add Card" or "Check Out" page are in
25  an inconspicuous and tiny font, as shown below:

26
27

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 19

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

42.     Regardless of how the consumer is enrolled into an Audible Subscription, even for those having a prior existing Amazon Account, Defendant fails to adequately disclose the offer terms, as defined under the ARL, of its automatically renewing Audible Subscription either before or after the purchase. And, at no point throughout the account creation and Audible Subscription enrollment process, does Defendant require the customer to affirmatively agree to the complete Audible Subscription offer terms, *i.e.*, by requiring consumers to "click" or select a checkbox before they complete the enrollment and checkout process and submit their order for an Audible Subscription. Consequently, Defendant uniformly fails to obtain any form of consent from, or even provide effective notice to, their consumers before charging their Billing Information on a recurring basis.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 20

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**V.     Defendant's Cancellation Procedure.**

43.     Under AB 390, the ARL now requires e-commerce sellers, doing business in California, to provide an immediately available and "exclusively online" cancellation mechanism either in the form of a "prominently located" button or link on the consumers account or profile, or an "immediately accessible" pre-written termination email provided by the business. Cal. Bus. & Prof. Code §§ 17602(d)(1)(A)–(B). The legislative history confirms that AB 390 was intended to require a one-step online method of subscription cancellation to eliminate the use of online chat boxes "or the filling out of surveys as a prerequisite to effectuate a cancellation."[38]

44.     Defendant's cancellation process, which does not include an immediately accessible pre-written termination email, fails to satisfy that basic statutory requirement. In order to cancel an Audible Subscription, consumers must engage in a multistep process, that includes the use of a survey in order to effectuate their cancellation, in violation of ARL section 17602(d).

45.     When a consumer navigates to their account webpage it provides their account and subscription information. In small blue font there is a "cancel membership" link. Compliance with the ARL would require that the "cancel membership" link be "prominently located," which it is not since it is at the bottom of the webpage, and it does not stand out from the other website text. Further, when consumers click on this link their Audible Subscription should terminate. Following the enactment of AB 390, e-commerce businesses offering automatic renewal agreements, or continuous service agreements, online can no longer use dark patterns, multiple steps, or the filling out of surveys to hide, hinder, or delay the consumers ability to cancel their automatic renewal. But, contrary to the ARL, Defendant does just that.

46.     When a consumer selects the "cancel membership" link, instead of terminating the subscription, consumers are directed to another webpage presenting the consumer with the question "Need to pause your membership? Take a break and keep listening" followed by an

---

[38] *Id.*

CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION; VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; AND RESITUTION/UNJUST ENRICHMENT - 21

activation button "Let's do this." Defendant's ploy urging consumers to "pause" their membership dominates the computer screen and any sign of a "prominently located" cancellation button does not immediately appear. Rather, consumers must read and wade through Defendant's advertising of "Member Exclusive Pricing" by scrolling down to the bottom of the webpage before any type of cancellation button is shown below a "Don't miss out" banner and directly next to a "Yes, keep membership" button. What's more, during the relevant time period, and upon information and belief, the "Yes, keep my membership" button was highlighted making that button stand out on the webpage—intending to distract consumers from even noticing the "No, continue cancellation" button.

47.     When the consumer rejects Defendant's "Keep membership" offer they are directed to another webpage wherein consumers are prompted to answer a survey before continuing the cancellation process. Additionally, Defendant urges consumers not to "leave anything on the table" and to contact customer service for help. Again, at the relevant time period, and upon information and belief, Defendant's "Yes, keep your membership" button is highlighted, stands out on the webpage, and was meant to distract consumers from noticing the "No, continue cancellation" button. Notably, Defendant's constant use of "Yes, keep your membership" is itself a form of a dark pattern known as "trick wording"[39] because, when read quickly, as hurried consumers may do, the word "Yes" misleads the consumer into thinking that by selecting the "Yes" button they are confirming their cancellation, which is not the case. In other words, Defendant's "Yes, keep your membership" and "No, continue cancellation" buttons confuse and trick consumers during the cancellation process by requiring them not to confirm cancellation but reject Defendant's offers.

48.     Having completed the survey and selecting the "No, continue cancelling" button after Defendant's survey, the consumer is directed to another webpage. Again, as with all the

---

[39] *Trick Wording*, DECEPTIVE DESIGN, https://www.deceptive.design/types/trick-wording ("The user is misled into taking an action, due to the presentation of confusing or misleading language.") (last accessed Apr. 24, 2023).

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 22

prior cancellation pages, Defendant pesters consumers with a multiple offers: 1) "RECOMMENDED OFFER" to "Get Audible Premium Plus at 50% off for 3 months"; 2) switching to an every other month payment plan; and 3) another option to pause membership. These options are presented in big, bold boxes that, again, dominate the webpage interface and there is no indication of a "prominently located" cancellation button on this page. Because this final webpage presents multiple new Audible Subscription offers, particularly hurried consumers may mistakenly believe that they have cancelled their Audible Subscription when they have not. Consumers can only find and ultimately cancel their Audible Subscription by scrolling to the bottom of the webpage and selecting the "Confirm cancellation" button which itself is located directly next to a "Back to my account" link.

49.     It is Defendant's responsibility, regardless of the consumer's experience within the e-commerce and automatic renewal marketplace, to abide by AB 390. And, although it offers an online mechanism for cancelling an Audible Subscription, Defendant's multistep cancellation process is replete with dark patterns designed to reduce churn, all for the purposes of increasing revenues. Indeed, Defendant's constant urging of consumers to "pause" their Audible Subscription, presentation of the "Don't miss out" and "RECOMMENDED OFFER" buttons, and continuous use of "Yes, keep membership" and "Back to my account" buttons are, in and of themselves, classic examples of a dark pattern known as "confirmshaming" wherein the business, as does Defendant, makes consumers feel guilty for canceling their Audible Subscriptions.[40]

50.     Defendant owns and operates the Audible Platforms, and it cannot feign ignorance of its noncompliant cancellation mechanism. Defendant is required to comply with the ARL, and all applicable statutes, at all times. The general public is at risk of future financial harm as

---

[40] *See* "Confirmshaming" is the emotional manipulation to coerce the user into doing something that they otherwise would not have done and works "by triggering uncomfortable emotions, such as guilt or shame, to influence users' decision-making." *Confirmshaming*, DECEPTIVE DESIGN, https://www.deceptive.design/types/confirmshaming (last accessed Apr. 24, 2023).

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 23

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

a result of Defendant's continued noncompliance with the ARL sections 17602(a) and (d). Plaintiffs request public injunctive relief, which is not sought for the Class but rather for the general public of California, *i.e.*, consumers who have yet to transact with Defendant but are at risk of doing so in the future, *see McGill*, *supra*, to require Defendant to bring its Audible Subscription enrollment and cancellation policies and procedure into compliance with ARL sections 17602(a) and (d).

**VI.     Defendant Violates the California Auto Renewal Law.**

51.     At all relevant times, Defendant violated the ARL by: (i) failing to present its complete Audible Subscription offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the purchase is fulfilled, in violation of ARL section 17602(a)(1); (ii) charging consumers' Billing Information without first obtaining their affirmative consent to the Audible Subscription, in violation of ARL section 17602(a)(2); (iii) failing to provide an acknowledgement that includes the automatic renewal offer terms, cancellation policy, and information explaining how consumers can cancel the Audible Subscription in a manner that is capable of being retained by the consumer, in direct violation of ARL sections 17602(a)(3); and (iv) failing to provide consumers a one-step "prominently located" cancellation button or link on their Audible account page and failing to provide consumers with an "immediately accessible" cancellation email in ARL section 17602(d). Plaintiff Ms. Viveros, the Class, and the general public remain at risk of future harm should these practices not be enjoined.

**i.     Defendant does not present the Audible Subscription offer terms "clearly and conspicuously" and in "visual proximity" to its request for consent to the automatic renewal offer terms before the purchase of an Audible Subscription is fulfilled.**

52.     The relevant portion of the "Check Out" page does not present the complete "automatic renewal offer terms," as defined by ARL section 17601(b), in violation of ARL section 17602(a)(1). Specifically, Defendant does not present a complete "description of the

CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION; VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; AND RESITUTION/UNJUST ENRICHMENT - 24

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

cancellation policy that applies to the offer." Cal. Bus. & Prof. Code § 17601(b)(2). Defendant's "Check Out" page does not describe how or when consumers must cancel in order to avoid further renewal charges. Although the "Check Out" page includes a link to Defendant's privacy policy, Conditions of Use, and states, "[c]ancel anytime via Account Details" these hyperlinks and terms embedded therein fail to satisfy the ARL. It is insufficient under the ARL that Defendant's complete Audible Subscription offer terms appear elsewhere on the Audible Platform via a hyperlink to its Conditions of Use. *See Turnier v. Bed Bath & Beyond Inc.*, 517 F.Supp.3d 1132, 1140 (S.D. Cal. 2021) ("But the [automatic renewal] terms themselves—not the access point to them—need to be in visual proximity to the request."). The ARL requires that the pre-purchase disclosures be made "clearly and conspicuously" and "*before* the subscription or purchasing agreement is fulfilled and in visual proximity . . . to the request for consent to the offer[.]" Cal. Bus. & Prof. Code § 17602(a)(1) (emphasis supplied); *see also id.* § 17602(f) ("The requirements of [the ARL section 17602(a)(1)] . . . apply only *prior* to the completion of the initial order for the automatic renewal or continuous service[.]") (emphasis supplied). But there is no "clear and conspicuous" statement of when consumers must cancel in order to avoid charges for the following billing period, how consumers can find the cancellation mechanisms within their account page and effectuate their cancellation, nor does it explain the differing cancellation processes and features for those consumers who signed up for an Audible Subscription via another platform—*e.g.*, Google Play or iOS. As such, Defendant is in violation of ARL section 17602(a)(1).

53. Moreover, Defendant's "Check Out" page also fails to clearly and conspicuously disclose the length of the automatic renewal term associated with the Audible Subscription. *See* Cal. Bus. & Prof. Code §§ 17601(b)(4); 17602(a)(1). In particular, although the "Check out" page, in the example shown above, states that the consumer's Audible Subscription will "continue[] until cancelled for $14.95/mo + taxes" the precise date of when consumers Billing Information will be charged is not provided. For example, it is not clear whether "$14.95/mo"

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 25

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

refers to the precise calendar date of the consumer's initial enrollment, in which case the Audible Subscription would renew every 28-31 days depending on the given month, or refers to four-week intervals, in which case the Audible Subscription would renew every 28 days without regard to the calendar date or exception. This information is necessary for consumers to successfully affect cancellation before incurring additional and unwanted charges. As noted above, Defendant does not clearly and conspicuously disclose when and how consumers must cancel their Audible Subscription to avoid charges for the following month of which is tied to the precise renewal date. Accordingly, reasonable consumers would want to know, and must know, Defendant's precise length of automatic renewal offer terms and reasonable customers would thus find Defendant's stated length unclear especially when Audible consumers must affirmatively cancel their Audible Subscription to avoid further charges to their Billing Information or Amazon Account. For example, if consumers are not on notice of the precise date at which their Audible Subscription will renew and exactly when their Billing Information or Amazon Account will be charged each month, they cannot, as a practical matter, affect cancellation before that date. As such, Defendant fails to disclose "[t]he length of the automatic renewal term" in the manner required by the ARL. Cal. Bus. & Prof. Code §§ 17601(b)(4); 17602(a)(1).

54.     Defendant's "Check out" page, the page wherein it requests consent to the automatically renewing Audible Subscriptions, does not make the statutorily required disclosures of the complete Audible Subscription offer terms, as defined by ARL section 17601(b), in a "clear and conspicuous" manner and within "visual proximity" to Defendant's request to complete the purchase of its automatic renewal in violation of ARL section 17602(a)(1). Defendant's reference to its cancellation policy and procedure, as well as the other Audible Subscription offer terms, and the hyperlinks to its Conditions of Use is not tantamount to its pre-purchase disclosure of its Audible Subscription offer terms under the ARL.

//

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 26

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

ii.     **Defendant does not obtain consumers' affirmative consent to the terms associated with the Audible Subscription.**

55.     The ARL provides a checklist sellers, such as Defendant, must follow in order to obtain consumer affirmative consent, *id*. § 17602(a)(1), that if violated results in the return of charges for failure to obtain affirmative consumer consent to the automatic renewal. *Id.* § 17603. As alleged herein, Defendant has failed to follow the ARL's mandatory checklist and has thus failed to obtain consumers' affirmative consent to the automatically renewing Audible Subscription before charging their Billing Information in violation of ARL section 17602(a)(2).

56.     Further, at no point during the enrollment or checkout process does Defendant require consumers to read or affirmatively agree to the complete offer terms, as defined by the ARL, associated with the Audible Subscription, *i.e.*, by requiring consumers to select or click a "checkbox" affirming their consent to the automatic renewal offer terms to complete the enrollment into an Audible Subscription. As such, when Defendant automatically renews consumers' Audible Subscriptions, Defendant charges their Billing Information without first obtaining their affirmative consent to the agreement containing the automatic renewal in violation of ARL section 17602(a)(2).

iii.    **Defendant does not provide a post-purchase acknowledgment that includes clear and conspicuous disclosures of required Audible Subscription offer terms, cancellation policy, and how consumers can cancel their Audible Subscription.**

57.     After enrolling in an Audible Subscription, Defendant sends an email confirming (the "Confirmation Email") the purchase. Defendant's Confirmation Email suffers from the same deficiencies as its "Check Out" page in that it does not describe 1) Defendant's cancellation policy and how to cancel the Audible Subscription, and 2) the length of the Audible Subscription as required by the ARL. Cal. Bus. & Prof. Code §§ 17601(b)(1)–(4); 17602(a)(3). Accordingly, the Confirmation Email fails to "include[] the automatic renewal offer terms[,] cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer" in violation of ARL section 17602(a)(3).

CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION; VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; AND RESITUTION/UNJUST ENRICHMENT - 27

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

2

**iv.     Defendant charges consumers' Billing Information when Audible consumers are not provided with a one-step cancellation mechanism as is required by the ARL.**

3       58.     Defendant does not maintain a one-step (direct link or prepopulated email)

4    cancellation mechanism for consumers to terminate their Audible Subscription at will and

5    without engaging in any further steps that obstruct or delay the consumer's ability to terminate

6    the automatic renewal or continuous service immediately, in violation of *id.* § 17602(d)(1)(A)–

7    (B). Rather, if a consumer attempts to cancel an active subscription, Defendant requires the

8    consumer to take multiple steps, replete with dark patterns, and answer questions to complete

9    the cancellation request and avoid additional charges. As alleged above, when a consumer

10   attempts to cancel, rather than immediately processing and effectuating their request, Defendant

11   presents additional questions and new offers in an attempt to entice the consumer to abandon a

12   cancellation request or mistakenly believe they had cancelled their Audible Subscription. This

13   delays and hinders the cancelation process in plain violation of ARL section 17602(d).

14      59.     In sum, Defendant's pre-purchase and post-purchase disclosures fail to comply

15   with the ARL. Nowhere in the foregoing enrollment process did Defendant present the complete

16   terms of the Audible Subscription offer in a "clear and conspicuous" manner and in "visual

17   proximity" to the offer before the purchase is completed in violation of ARL section

18   17602(a)(1). Defendant fails to obtain affirmative consent from consumers to the Audible

19   Subscription before charging their Billing Information in violation of ARL section 17602(a)(2).

20   Defendant's Confirmation Email does not provide the complete Audible Subscription offer

21   terms, cancellation policy, and information regarding cancellation policies in a manner that is

22   capable of being retained by the consumer in violation of ARL sections 17602(a)(3). Defendant

23   does not maintain features on its Audible Platforms allowing for immediate cancellation of

24   subscriptions without requiring consumers to answer more questions and take additional steps

25   in direct violation of ARL section 17602(d). By and through these actions, Defendant has

26

27

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 28

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

charged Plaintiffs' and the Class's Billing Information in violation of the ARL under Cal. Bus & Prof. Code §§ 17602(a)(1)–(3); 17602(d).

60.     Because Defendant failed, and continues to fail, to obtain consumers' consent to the automatically renewing Audible Subscription, and failed, and continues to fail, to provide a one-step cancellation method in the manner required by the ARL, all of the Audible Products delivered to Plaintiffs and the Class were unconditional free gifts by operation of law for which Defendant should not have charged. *See id.* § 17603. All of the money Defendant charged from Plaintiffs' and the Class's Billing Information were thus unlawful by operation of the ARL for which restitution is warranted.

61.     Defendant's violations of the ARL systematically occur in substantively the same manner every time a prospective consumer is enrolled into the Audible Subscription. Every Audible consumer received the same legally inadequate disclosures on the front and back end of their transactions. Defendant thus charges every Audible consumers' Billing Information without obtaining the consumers' affirmative consent to the automatically recurring Audible Subscription. Every Audible consumer is subject to the exact same unlawful multistep cancellation procedure.

## PLAINTIFFS' INDIVIDUAL ALLEGATIONS

**A.     Plaintiff Renee Viveros.**

62.     Plaintiff Renee Viveros is an individual consumer who, while residing in California, signed up for an Audible Subscription, on a gift trial basis, through the Audible Platform on or around January 2020 for $14.95, exclusive of any applicable taxes.[41] At the time Ms. Viveros signed up for her Audible Subscription, she provided her Billing Information directly to Defendant.

---

[41] The pre-purchase and post-purchase disclosures required by the ARL were nearly identical in the 2020 version of the statute as they are now. *Compare* Cal. Bus. & Prof. Code §§ 17602(a)(1)–(3) (2018) *with id.* (2022). Further, the definition of "automatic renewal offer terms" remains unchanged from the ARL's initial 2010 enactment. *Id.* § 17601(b)(1)–(5) (2010).

CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION; VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; AND RESITUTION/UNJUST ENRICHMENT - 29

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

63.     Before Ms. Viveros purchased her Audible Subscription, Defendant did not disclose all of the offer terms of the Audible Subscription as required by the ARL. Additionally, although the "Check Out" page from which Ms. Viveros made her initial purchase included some relevant information regarding the offer terms associated with the Audible Subscription, the manner in which it was presented, which was substantively the same as the image shown above, was incomplete, missing, or otherwise deficient and, thus, did not put Ms. Viveros on sufficient notice of the automatic renewal terms. Specifically, prior to completing her purchase of the Audible Subscription, the relevant screens presented to Ms. Viveros did not clearly and conspicuously present the renewal offer terms, including *inter alia* the complete terms of Defendant's cancellation policies and procedures, and the precise length of the Audible Subscription renewal terms. Ms. Viveros did not see, nor did she affirmatively agree to, the automatic renewal offer terms associated with the Audible Subscription.

64.     After Ms. Viveros completed her initial order, upon information and belief, Defendant sent her an email confirming the initial purchase. However, as described above, Ms. Viveros's Confirmation Email did not provide the complete automatic renewal terms that applied to the Audible Subscription in a manner that included a full description of Defendant's cancellation policy, how Ms. Viveros can cancel her Audible Subscription, or the precise length of Defendant's Audible Subscription renewal term. Ms. Viveros did not receive any other acknowledgement containing the required information from Defendant.

65.     As a result of Defendant's missing and otherwise deficient pre-purchase and post-purchase disclosures, when Ms. Viveros made her initial purchase of the Audible Subscription, she was not made aware that Defendant enrolled her in an "automatic renewal" program under which the subscription would renew each month resulting in automatic charges to her Billing Information unless and until she cancelled. Defendant automatically renewed Ms. Viveros's monthly Audible Subscription and charged her Billing Information from her initial January 2020

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 30

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

transaction through the present for approximately 35 months at $14.95 for a total of $523.25, exclusive of applicable taxes.

66.    In or around December 2021, Ms. Viveros wanted to cancel her Audible Subscription. After finding no online cancellation feature and being unaware of any other "exclusively online" cancellation feature, as was required in December 2021,[42] Ms. Viveros did not know how to cancel her Audible Subscription because Defendant did not provide that information to her in its pre-purchase and post-purchase disclosures and acknowledgments in the manner required by the ARL. Ms. Viveros therefore called Defendant's customer service to request cancellation. However, the customer service representative told Ms. Viveros that she would lose all of her downloaded audiobooks as a result of Defendant's automatic charging of her Billing Information if she cancelled her Subscription. Ms. Viveros, not wanting to lose the audiobooks, paused her Audible Subscription for three months instead of cancelling it. In or around March 2022, Defendant continued automatically charging Ms. Viveros's Billing Information $14.95 per month, exclusive of applicable taxes. Had Ms. Viveros been made aware of an "exclusively online" cancellation mechanism in December 2021, as was required, she would have cancelled her Audible Subscription then instead of incurring additional and unauthorized monthly charges to her Billing Information of $14.95 per month for approximately 12 months for a total of $179.40, exclusive of applicable taxes, in additional out-of-pocket economic loss.

67.    Ms. Viveros was subjected to the same disclosures, same omissions, same Audible Platform and same cancellation features and mechanisms as other consumers and members of the Class. Defendant failed to fully disclose the complete Audible Subscription offer terms, in violation of ARL section 17602(a)(1) and, as alleged herein, Defendant charged Ms. Viveros's Billing Information without having her affirmative consent as required under the

---

[42] Cal. Bus. & Prof. Code § 17602(c) (". . . a consumer who accepts an automatic renewal or continuous service offer online shall be allowed to terminate the automatic renewal or continuous service *exclusively online* . . .") (2018).

CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION; VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; AND RESITUTION/UNJUST ENRICHMENT - 31

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

ARL. *See* Cal. Bus. & Prof. Code § 17602(a)(2). As such, the Audible Products sent to Ms. Viveros as part of the Audible Subscription were unconditional free gifts by operation of law. *See id.* § 17603. Therefore, every automatic charge made by Defendant against Ms. Viveros's Billing Information for the Audible Subscription was an unlawful payment for Audible Products that were free gifts by statute. Ms. Viveros relied on Defendant's representation that it could legally charge her for the Audible Subscription when in fact, because of Defendant's non-compliance with the ARL, and because of its failure to obtain Ms. Viveros's affirmative consent to the automatically renewing Audible Subscription, the Audible Products Defendant charged her Billing Information were unconditional free gifts by operation of law. Ms. Viveros did not authorize Defendant's charges for the Audible Products associated with the Audible Subscription that were deemed unconditional free gifts under the law. Further, had Defendant fully disclosed its Audible Subscription cancellation policies and procedures, as is required under the ARL, *see id.* § 17601(b)(2); § 17602(a)(1), negating the need for her to call Defendant's customer service, Ms. Viveros would have cancelled her Audible Subscription in December 2021. Had Ms. Viveros been fully informed of Defendant's Audible Subscription offer terms, and the circumstances in which Defendant could lawfully charge her Billing Information for the Audible Products associated with the Audible Subscription, she would not have been enrolled into the Audible Subscription in or around January 2020.

68.     Defendant continues to charge Ms. Viveros's Billing Information at $14.95 per month. As such, as alleged above, Defendant's current cancellation mechanism continues to violate AB 390 in that it does not provide a "prominently located" one-step cancellation mechanism on consumers' account webpage or profile nor does Defendant provide customers with an "immediately accessible" cancellation email to immediately terminate an Audible Subscription without obstruction or delay in violation of ALR section 17602(d). Thus, Ms. Viveros remains at risk of further harm resulting from Defendant's continued non-compliance with the ALR.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION; VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; AND RESITUTION/UNJUST ENRICHMENT - 32

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

69.     As a result of the forgoing conduct of Defendant, Ms. Viveros has incurred out-of-pocket economic loss of $523.25 as a result of Defendant's unauthorized charging of her Billing Information in total, exclusive of any applicable taxes, for which she now seeks relief.

70.     Apart from any individual and class relief, Plaintiff seeks public injunctive relief on behalf of the general public in California. Members of the general public of California, who have not transacted, but are likely to transact, with Defendant should be protected from Defendant's current and ongoing violations of the ARL and other laws described herein, for which injunctive relief is necessary and appropriate to correct at this time for their protection. Such relief will create a public benefit.

**B.      Plaintiff Christine Bias**

71.     Plaintiff Christine Bias is an individual consumer who, while residing in California, signed up for an Audible Subscription, on a gift trial basis, through the Audible Platform in or around May 2022. Ms. Bias, who had an existing Amazon Account, initially signed up for Audible through a one-month free credit by Defendant. When Ms. Bias signed up for her one-month free credit from Defendant she did not input her Billing Information because Defendant pulled Ms. Bias's Billing Information from her Amazon Account.

72.     Before Ms. Bias downloaded her free audiobook from Defendant's Audible Platform, Defendant did not disclose to her all the required offer terms of the Audible Subscription. Additionally, although the relevant "Check Out" page from which Ms. Bias initially signed up for Audible included some relevant information regarding the offer terms associated with the Audible Subscription, the manner in which it was presented, which was substantively the same as the images shown above, was incomplete, missing, or otherwise deficient and, thus, did not put Ms. Bias on sufficient notice of the automatic renewal terms. Specifically, prior to completing her free download, the relevant screens presented to Ms. Bias did not clearly and conspicuously present the renewal offer terms, including inter alia the complete terms of Defendant's cancellation policies and procedures, and the precise length of

CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION; VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; AND RESITUTION/UNJUST ENRICHMENT - 33

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

the Audible Subscription renewal terms. Ms. Bias was completely unaware that by her mere acceptance of Defendant's one-month free credit she was engaging in an automatic renewal of any kind. Ms. Bias also did not see, nor did she affirmatively agree to, the automatic renewal offer terms associated with the Audible Subscription.

73.     After Ms. Bias completed her initial order for the free credit, upon information and belief, Defendant sent her an email confirming her order. However, as described above, Ms. Bias's Confirmation Email did not provide the complete automatic renewal terms that applied to the Audible Subscription in a manner that included a full description of Defendant's cancellation policy, how Ms. Bias can cancel her Audible Subscription, or the precise length of Defendant's Audible Subscription renewal term. Ms. Bias did not receive any other acknowledgement containing the required information from Defendant.

74.     As a result of Defendant's missing and otherwise deficient pre-purchase and post-purchase disclosures, when Ms. Bias made her initial order, she was not made aware that Defendant enrolled her in an "automatic renewal" program under which her subscription would renew each year resulting in automatic charges to her Billing Information unless and until she cancelled. Defendant automatically renewed Ms. Bias's Audible Subscription in or around June 2022 and charged her Billing Information $14.95, exclusive of any applicable taxes, every month from June 2022 until December 2022. In total, Defendant has charged Ms. Bias's Billing Information $104.65, exclusive of applicable taxes.

75.     The monthly fees that Defendant charged to Ms. Bias's Billing Information in connection to her free May 2022 order came as a complete surprise because, up until the time she discovered Defendant's numerous charges, Ms. Bias believed that her May 2022 order was a single, one-month, free transaction that would not automatically renew. As a result, Ms. Bias did not expect to incur any charges in connection with her initial May 2022 order. In sum, Ms. Bias did not know and did not expect that her initial order of a free audiobook would automatically convert into an automatic renewal in which her Billing Information would

CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION; VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; AND RESITUTION/UNJUST ENRICHMENT - 34

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1
2
continue to be charged on a recurring monthly basis because Defendant failed to provide the complete pre-purchase disclosures as defined and required under the ARL.

3
4
5
6
7
8
9
10
76.     When Ms. Bias learned that her initial order did, in fact, automatically renew into an Audible Subscription and would continue to do so without her intervention, Ms. Bias had no idea how to cancel her Audible Subscription, but she did not expect it to be a difficult process. Although Ms. Bias was able to cancel her Audible Subscription online, it was not a straight-forward, one-step process. Rather, Ms. Bias spent much time and energy searching for any sign of a "prominently located" cancellation button or link. Ms. Bias eventually located the inconspicuous "cancel membership" link and successfully navigated through Defendant's unlawful and noncompliant cancellation process, as described above.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
77.     Ms. Bias was subjected to the same disclosures, same omissions, same Audible Platform and same cancellation features and mechanisms as other consumers and members of the Class. Because Defendant failed to fully disclose the complete Audible Subscription offer terms, in violation of ARL section 17602(a)(1) and, as alleged herein, Defendant charged Ms. Bias's Billing Information without having her affirmative consent as required under the ARL. *See* Cal. Bus. & Prof. Code § 17602(a)(2). As such, the Audible Products sent to Ms. Bias as part of the Audible Subscription were unconditional free gifts by operation of law. *See id.* § 17603. Therefore, every automatic charge made by Defendant against Ms. Bias's Billing Information for the Audible Subscription was an unlawful payment for Audible Products that were unconditional free gifts by statute. Had Ms. Bias received the complete Audible Subscription offer terms in the manner mandated by the ARL at the time she made her initial May 2022 free order, and had Ms. Bias received the post-purchase acknowledgments, as is also required under the ARL, Ms. Bias would not have consented to her initial ordered nor would she have consented to the Audible Subscription. In other words, Ms. Bias would not have accepted Defendant's one-month free credit had she been made aware she was, in fact, engaging in an automatic renewal agreement with Defendant. Further, although she was able to cancel her

CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION; VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; AND RESITUTION/UNJUST ENRICHMENT - 35

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Audible Subscription in or around December 2022, Ms. Bias was not provided with a one-step "prominently located" cancellation button or link, nor was she provided with an "immediately accessible" termination email, in violation of ARL section 17602(d), as was required in December 2022.

78.     As a result of the forgoing conduct of Defendant, Ms. Bias has incurred out-of-pocket loss of $104.65 in total, exclusive of any applicable taxes, in out-of-pocket economic loss for which she now seeks relief.

79.     Apart from any individual and class relief, Ms. Bias seeks public injunctive relief on behalf of the general public in California. Members of the general public of California, who have not transacted, but are likely to transact, with Defendant should be protected from Defendant's current and ongoing violations of the ARL and other laws described herein, for which injunctive relief is necessary and appropriate to correct at this time for their protection. Such relief will create a public benefit.

## **CLASS ALLEGATIONS**

80.     Plaintiffs' experience with Defendant's deceptive and unlawful Audible Subscription scheme is far from unique. Indeed, every California consumer who was enrolled in any Audible Subscription within the relevant statute of limitation period failed to receive the requisite disclosures prior to their purchase and post-purchase acknowledgments as required by the ARL, Cal. Bus. & Prof. Code §§ 17602(a)(1)–(3), in exactly the same manner that Plaintiffs failed to receive them. Additionally, every California consumer was provided the same inadequate and unlawful cancellation mechanisms as Plaintiffs in violation of the ARL section 17602(d). Because all of the automatic renewal fees Defendant assessed against Plaintiffs and California consumers were unlawful, Plaintiffs and all members of the Class they seek to represent are entitled to restitution of the fees they paid, in every successive month or year for which they were assessed.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 36

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

81.    **Class Definition**: Plaintiffs bring this action pursuant to Washington Civil Rule 23 on behalf of a class of similarly situated individuals, defined as follows (the "Class"):

> All individuals who (i) enrolled in an Audible Subscription while in California, within the applicable statute of limitations, up to and including the filing of this complaint, and who were subsequently assessed an automatic renewal fee associated with their Audible Subscription; or (ii) attempted to cancel an Audible Subscription while in California since July 1, 2022, and who were subsequently assessed an automatic renewal fee associated with their Audible Subscription.

82.    Excluded from the Class are Defendant and any entities in which it has controlling interest; Defendant's officers, employees, and agents; the undersigned Plaintiffs' counsel and all employees of their law firm; and the judicial officers and staff.

83.    Plaintiffs reserve the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

84.    **Numerosity**: Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, the Class comprises at least tens of thousands of Californian consumers. The precise number of the Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Defendant maintains billing records, other customer lists and records identifying persons who subscribed during relevant time periods and their contact information (address and/or email). Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

85.    **Commonality**: Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to: (1) whether Defendant presented all statutorily-required automatic renewal offer terms in a manner that is clear and conspicuous within the meaning of the ARL and in visual proximity to a request for consent to the offer; (2) whether Defendant provided the post-transaction acknowledgment disclosures required by section 17602(a)(3) of the ARL; (3) Defendant's policies, practices and procedures for obtaining affirmative consent from their California consumers before charging their Billing Information

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

or Amazon Account; (5) whether Defendant maintained an immediate cancellation process consistent with the requirements of section 17602(d); and (5) the appropriate remedies for Defendant's unlawful conduct.

86.   **Typicality**: Plaintiffs were subjected to the same disclosures, same omissions, same Audible Platforms and same cancellation features and mechanisms as other consumers and members of the Class. Plaintiffs' claims are typical of the claims of the class members in that they enrolled in Audible Subscriptions in the same manner, received the exact same inadequate pre-purchase disclosures as received by all members of the class, and similarly received an inadequate post-purchase acknowledgement that included the contents required under section 17602(a)(3). Plaintiffs' claims are also typical in that their Billing Information or Amazon Account was charged for automatic renewal fees without Defendant having first obtained their affirmative consent to an agreement containing clear and conspicuous disclosures of all Audible Subscription offer terms. Plaintiffs' claims are further typical in that they were and are subject to Defendant's non-compliant cancellation mechanism in the same manner as the Class. Plaintiffs, as with other consumers and the members of the Class, suffered economic loss because Defendant represented amounts as due and owing, and charged their Billing Information, for the Audible Products associated with the Audible Subscription that were unconditional free gifts for which Defendant could not lawfully require payment.

87.   **Adequacy**: Plaintiffs will fairly and adequately protect the Class's interests. Plaintiffs have no interest antagonistic to the Class's interest, and Plaintiffs have retained counsel that has considerable experience and success in prosecuting complex class-action and consumer-protection cases.

88.   **Inconsistent Adjudications/Predominance**: This action is maintainable as a class because (1) the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications, which could establish incompatible standards of conduct for Defendant; (2) the adjudication sought by Plaintiffs would as a

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 38

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

practicable matter be dispositive as to the interests of other class members who are not named in this litigation; (3) Defendant's conduct is consistent with respect to the class and any grounds on which Defendant has refused to comply with the ARL are generally applicable to the class, making appropriate final injunctive relief appropriate for the class as a whole; and/or (4) questions of law and fact common to the class predominate over any issues affecting only individual members.

89.     **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecution of individual actions are economically impractical for members of the Class; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecutions as a class action permits claims to be handled in an orderly and expeditious manner.

90.     Without class action, Defendant will continue a course of action that will result in further damages to Plaintiffs and members of the Class and will likely retain the benefits of their wrongdoing.

91.     Based on the foregoing, Plaintiffs' claims for relief include those set forth below.

92.     As noted above, apart from relief for the Class, Plaintiffs separately seek public injunctive relief on behalf of the general public of California to stop the ongoing and continuing violations of California law described above. Members of the general public in California who have not transacted with Defendant but may in the future are at risk of new harms, injuries and financial losses from the ongoing and continuing conduct complained of unless enjoined and corrected. Such claims for public injunctive relief are not required to be certified as class actions and the above elements are not required to be satisfied for such relief.

//

//

//

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 39

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**FIRST CLAIM FOR RELIEF**

**For Violation of the California Unfair Competition Law ("UCL")**

**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*

93.     Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs.

94.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

95.      The UCL prohibits unfair competition in the form of "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act." Cal. Bus. & Prof. Code § 17200. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. *Id.* § 17204. Such a person may bring such action on behalf of her or himself and other similarly situated who are affected by the unlawful business practice or act.

96.     At all relevant times, Defendant has violated, and continues to violate, the UCL's proscription against engaging in unlawful conduct as a result of its violations of the ARL. Cal. Bus. & Prof. Code §§ 17600, *et seq.* Specifically, Defendant failed, and continues to fail, to: (a) provide the complete terms of Defendant's Audible Subscription offer terms "in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity . . . to the request for consent to the offer[,]" in violation of *id.* § 17602(a)(1); (b) obtain the affirmative consent of Plaintiffs and the Class to those terms before charging their Billing Information or Amazon Account, in violation of *id.* § 17602(a)(2); (c) provide an acknowledgment that includes the Audible Subscription offer terms, Defendant's cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by consumers, in violation of *id.* § 17602(a)(3); (d) provide consumers a means (direct link or prepopulated email) to terminate the automatic renewal or continuous service exclusively online, at will, without engaging in any further steps that obstruct or delay the consumer's ability

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

to terminate the automatic renewal or continuous service immediately, in violation of *id.* § 17602(d)(1)(A)–(B).

97.     Each of these acts and practices constitutes an independent violation of the ARL, and thus an independent violation of the UCL.

98.     All products received from Defendant in violation of the ARL constitute "unconditional gifts." *See id* § 17603. As a direct and proximate result of Defendant's unlawful practices described herein, Defendant has received, and continues to hold, unlawfully obtained property and money belonging to Plaintiffs and the Class in the form of payments made by Plaintiffs and the Class for their purchase of Audible Subscriptions. Due to the violations of the ARL referenced above, the goods and services provided by Defendant were considered unconditional free gifts prior to the time Plaintiffs' and the Class's Billing Information was charged by Defendant and therefore, those amounts collected by Defendant should be restored to Plaintiffs, and the Class, and refunded in full. The amounts charged and collected by Defendant are overcharges as they extend beyond the amounts consumers should have been billed and charged due to the foregoing, and Defendant was in turn, unauthorized to bill, charge, and collect. Defendant has greatly profited from its unlawful acts and practices in the amount of those business expenses and interest accrued thereon.

99.     Further, as alleged below, Defendant has committed additional unlawful business practices under the UCL by: (a) representing that Defendant's goods and services have certain characteristics that they do not have, in violation of Cal. Civ. Code § 1770(a)(5); (b) advertising goods and services with the intent not to sell them as advertised, in violation of Cal. Civ. Code § 1770(a)(9); (c) Defendant represented that a transaction in question conferred or involved rights, remedies, or obligations that it did not have or involve, or were otherwise prohibited by law, in violation of *id.* § 1770(a)(14); and (d) Defendant inserted an unconscionable provision in the transaction at issue, *inter alia*, the choice of law provision contained in its Conditions of Use which require California consumers to waive the protections afforded to them under the

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 41

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

ARL, UCL, and CLRA all of which represent fundamental policies of California that cannot be waived by contract, in violation of *id.* § 1770(a)(19); and (e) converting to Defendant's own use and benefit money that rightfully belongs to Plaintiffs and the Class. Defendant's violations of the CLRA and conversion serve as an additional violations of the UCL.

100. At all relevant times, Defendant has violated, and continues to violate, the UCL's proscription against engaging in unfair conduct as a result of its violations of the ARL, Cal. Bus. & Prof. Code §§ 17600, *et seq*, and converting money that rightfully belongs to the Plaintiffs and the Class for Defendant's own use for which there is no redeeming moral or ethical utility.

101. Defendant's acts and omissions, as alleged herein, violate obligations imposed by the ARL, and other California statutes, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

102. There were reasonably available alternatives to further Defendant's legitimate business interest, other than the conduct described herein. Defendant's acts, omissions, nondisclosures, and misleading statements as alleged herein were and are false, misleading, and/or likely to deceive the consuming public.

103. Plaintiffs and the Class have suffered substantial injury in fact and lost money by virtue of Defendant's acts of unlawful competition, which caused them to be enrolled in an Audible Subscription from Defendant. Had Defendant complied with its pre-purchase disclosure and post-purchase acknowledgment obligations under the ARL, neither the Plaintiffs nor the Class would have purchased their Audible Subscription. Thus, Plaintiffs and the Class were damaged and have suffered economic injuries as a direct and proximate result of Defendant's unlawful and unfair practices.

104. Defendant's violations are continuing and there is no indication that Defendant intends to cease its unlawful conduct. The public and the Class are subject to ongoing harm

CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION; VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; AND RESITUTION/UNJUST ENRICHMENT - 42

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

wrought by the statutory violations, unlawful business practices associated with Defendant's ongoing and active automatically renewing Audible Subscription.

105.    As a direct and proximate cause of Defendant's unlawful business practices, as alleged herein, Plaintiffs and the Class have been damaged, injured, harmed and suffered ascertainable out-of-pocket losses thereby entitling them to recover restitution and equitable relief, including disgorgement of ill-gotten gains, refunds of moneys, interest, reasonable attorneys' fees, filing fees, and the costs of prosecuting this action, as well as any and all other relief that may be available at law or equity.

106.    Plaintiffs and the Class seek private injunctive relief prohibiting Defendant from continuing their unlawful practices in violation of the UCL. Unless enjoined, Plaintiff Ms. Viveros and the Class remain at risk of future injury and loss from the unlawful practices described herein which are continuing.

107.    Plaintiffs and the Class seek restitution pursuant to Cal. Bus. & Prof. Code § 17203 of all amounts that Defendant charged or caused to be charged to Plaintiffs' and the Class's Billing Information or Amazon Account in connection with their Audible Subscription during the applicable statute of limitations up to the filing of this Complaint. Defendant should be required to disgorge all the profits and gains it has reaped and restore such profits and gains to Plaintiffs and the Class, from whom they were unlawfully taken. Plaintiffs also seek private injunctive relief, declaratory relief, reasonable attorneys' fees and costs, and all other relief deemed appropriate in the circumstances. Until the challenged practices described herein are enjoined, Plaintiffs remain at risk of future injury.

108.    Additionally, pursuant to Cal. Bus. & Prof. Code § 17203, *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017) and any other applicable law, Plaintiffs on behalf of the general public of the State of California, seek a court order for public injunctive relief, declaratory relief and all other relief deemed appropriate in the circumstances including that enjoining Defendant from such future misconduct, and any other such orders that may be necessary to rectify

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 43

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Defendant's unlawful business practices and conduct. Such relief is appropriate and necessary to protect members of the general public who have not transacted with Defendant but are at risk to and thus need protection from ongoing and continuing violations of the ARL, CLRA, and UCL. Unless enjoined, members of the general public, who may transact with Defendant in the future, remain at risk of future injury and loss from the unlawful practices described herein which are continuing.

109.    Plaintiffs bring this action as private attorneys general and to vindicate and enforce an important right affecting the public interest. Plaintiffs and the Class are therefore entitled to an award of attorneys' fees and costs under Cal. Code of Civ. P. § 1021.5 and other applicable law for bringing this action.

## SECOND CLAIM FOR RELIEF

### Conversion

110.    Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs.

111.    Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

112.    Due to the violations of the ARL referenced above, the goods and services provided by Defendant are considered unconditional free gifts prior to the time Plaintiffs' and the Class's Billing Information or Amazon Account was charged by Defendant and therefore, those amounts collected by Defendant should be restored to Plaintiffs, and the Class, and refunded in full.

113.    As a result of charges made by Defendant to Plaintiffs' and the Class's Billing Information or Amazon Account without authorization and in violation of California law, Defendant has taken money that belongs to Plaintiffs and the Class.

114.    The amount of money wrongfully taken by Defendant is capable of identification.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 44

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

115.     Defendant engaged in this conduct knowingly, willfully, and with oppression, fraud, and/or malice.

116.     As a direct and proximate cause of Defendant's conduct, as alleged herein, Plaintiffs and the Class have been damaged, injured and suffered ascertainable losses, thereby entitling them to recover damages, restitution and equitable relief, including disgorgement of ill-gotten gains, refunds of money, interest, reasonable attorneys' fees, filing fees, and the costs of prosecuting this action, as well as any and all other relief that may be available at law or equity.

117.     Plaintiffs bring this action as private attorneys general and to vindicate and enforce an important right affecting the public interest. Plaintiffs and the Class are therefore entitled to an award of attorneys' fees and costs under Cal. Code of Civ. P. § 1021.5 and other applicable law for bringing this action.

## THIRD CLAIM FOR RELIEF

### Violation of the California Consumer Legal Remedies Act ("CLRA")

### Cal. Civ. Code §§ 1750, *et seq.*

118.     Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs.

119.     Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

120.     Plaintiffs and the Class are "consumers" within the meaning of the CLRA, *see* Cal. Civ. Code § 1761(d), in that Plaintiffs and the Class sought or acquired Defendant's goods and/or services for personal, family, or household purposes.

121.     Defendant's Audible Subscription offers and the products and services pertaining to the Audible Subscription are "goods" and/or "services" within the meaning of Cal. Civ. Code § 1761(a) and (b). The purchases by Plaintiffs and the Class are "transactions" within the meaning of Cal. Civ. Code § 1761(e).

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 45

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

122.    The acts and practices of Defendant as described herein were intended to deceive Plaintiffs and the Class and have resulted, and will continue to result, in damages to Plaintiffs and the Class. The actions violated, and continue to violate, the CLRA in at least the following respects: (a) Defendant's acts and practices constitute representations or omissions deceiving that their automatically renewing Audible Subscription has characteristics, uses, and/or benefits, which they do not, in violation of Cal. Civ. Code § 1770(a)(5); (b) Defendant's acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised, in violation of *id.* § 1770(a)(9); (c) Defendant represented that a transaction in question conferred or involved rights, remedies, or obligations that it did not have or involve, or were otherwise prohibited by law, in violation of *id.* § 1770(a)(14).

123.    Additionally, Defendant inserted unconscionable provisions in the transaction at issue, *inter alia*, the choice of law provision contained in the Conditions of Use, in violation of *id.* § 1770(a)(19). California's ARL, UCL, CLRA, and Plaintiffs' right to seek public injunctive relief are fundamental policies of the State of California that cannot be waived by contract. *See King v. Bumble Trading, Inc.*, 393 F.Supp.3d 856, 867–69 (N.D. Cal. 2019) (holding the ARL represented a fundamental policy of California); *Kissel v. Code 42 Software*, SACV 15-1936-JLS (KESx), 2016 WL 7647691, at *5 (C.D. Cal. Apr. 14, 2016) (same); Cal. Civ. Code § 1751 ("[a]ny waiver by a consumer of the provisions of [the CLRA] is contrary to public policy and shall be unenforceable and void."); *Pro Water Solutions, Inc. v. Angie's List, Inc.*, No. 2:19-cv-08704-ODW (SSx), 2021 WL 4288520, at *11 (C.D. Cal. Sept. 21, 2021) (finding the UCL to embody a fundamental policy of California which would be frustrated by enforcement of Indiana choice of law provision); Cal. Civ. Code § 3513 ("Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement."). Further, Plaintiffs' right to a jury trial is also secured by California law and cannot be waived via a pre-dispute jury trial waiver clause. *In re Cnty. of Orange*, 784 F.3d 520, 532 (9th Cir. 2015) ("California law holds, as a matter of public policy,

CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION; VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; AND RESITUTION/UNJUST ENRICHMENT - 46

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

that a litigant cannot waive its right to a jury trial by entering into a contract that contains a pre-dispute jury trial waiver clause."). Defendant's choice of law and pre-dispute jury trial waiver provisions are tantamount to an unlawful waiver of all the aforementioned fundamental policies of California and rights afforded to Plaintiffs, the Class, and all California consumers. As such, Defendant's choice of law provision is unconscionable as it is applied to Plaintiffs, the Class, and all California consumers.

124.    Plaintiffs and the Class suffered economic injury as a direct result of Defendant's misrepresentations and/or omissions because they were unlawfully charged for Audible Products associated with the Audible Subscription that were unconditional free gifts by operation of law. Had Defendant fully and clearly disclosed the terms associated with their Audible Subscription, Plaintiffs and the Class would not have subscribed to the Audible Subscription.

125.    Plaintiffs and the Class seek private injunctive relief prohibiting Defendant from continuing their unlawful practices in violation of the CLRA. Unless enjoined, Plaintiff Ms. Viveros and the Class remain at risk of future injury and loss from the unlawful practices described herein which are continuing.

126.    Plaintiffs on behalf of the general public seek public injunctive relief prohibiting Defendant from continuing their unlawful practices in violation of the CLRA. Unless enjoined, members of the general public, who may transact with Defendant in the future, remain at risk of future injury and loss from the unlawful practices described herein which are continuing.

127.    As a direct and proximate cause of Defendant's conduct, as alleged herein, Plaintiffs and the Class have been damaged, injured and suffered ascertainable loss, thereby entitling them, *inter alia*, injunctive and equitable relief, reasonable attorneys' fees, filing fees, and the costs of prosecuting this action, as well as any and all other relief that may be available at law or equity.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION; VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; AND RESITUTION/UNJUST ENRICHMENT - 47

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

128.    Damages on this Count alone are not sought at this time, only injunctive and declaratory relief and all other relief available at law or equity. Plaintiffs have complied with California Civil Code § 1782(a) by notifying Defendant in writing, by certified mail, of the violations alleged herein and demanded that Defendant remedy those violations. If Defendant fails to rectify or agree to rectify the problems detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to California Civil Code § 1782, Plaintiffs will amend this complaint to add claims for actual, punitive, and statutory damages pursuant to the CLRA.

129.    Plaintiffs bring this action as private attorneys general and to vindicate and enforce an important right affecting the public interest. The relief sought in this action will secure a public benefit. Plaintiffs and the Class are therefore entitled to an award of attorneys' fees and costs under Cal. Code of Civ. P. § 1021.5 and other applicable law for bringing this action.

## FOURTH CLAIM FOR RELIEF

### Unjust Enrichment/Restitution

130.    Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs.

131.    Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

132.    Plaintiffs and the Class conferred benefits to Defendant when Defendant charged their Billing Information or Amazon Account in connection with an Audible Subscription.

133.    Defendant has been unjustly enriched in retaining the revenues derived from ongoing renewal charges to Plaintiffs and the Class in connection with Audible Subscriptions. Retention of those moneys under the circumstances is unjust and inequitable because of Defendant's failure to disclose material terms of the Audible Subscription, in violation of

CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION; VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; AND RESITUTION/UNJUST ENRICHMENT - 48

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

California law, rendered the Audible Products associated with the Audible Subscription unconditional free gifts.

134.   Because Defendant's retention of the non-gratuitous benefits conferred to them by Plaintiffs and the Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Class for their unjust enrichment, as ordered by the Court.

135.   As a direct and proximate cause of Defendant's conduct, as alleged herein, Plaintiffs and the Class have been damaged, injured and suffered ascertainable losses, thereby entitling them to recover damages, restitution and equitable relief, including disgorgement of ill-gotten gains, refunds of money, interest, reasonable attorneys' fees, filing fees, and the costs of prosecuting this action, as well as any and all other relief that may be available at law or equity.

136.   Plaintiffs bring this action as private attorneys general and to vindicate and enforce an important right affecting the public interest. Plaintiffs and the Class are therefore entitled to an award of attorneys' fees and costs under Cal. Code of Civ. P. § 1021.5 and other applicable law for bringing this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, request relief as follows on all counts:

1.   For an order certifying the Class and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class;

2.   For an order declaring that Defendant's conduct violates the statutes and common law referenced herein;

3.   For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury, on all counts that may allow such relief;

4.   For prejudgment interest on all amounts awarded;

5.   For an order of restitution and all other forms of equitable monetary relief;

CLASS ACTION COMPLAINT FOR VIOLATION OF THE
CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION;
VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; AND RESITUTION/UNJUST
ENRICHMENT - 49

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

6.      For private injunctive relief as plead or as the Court may deem proper;

7.      For public injunctive relief as plead or as the Court may deem proper;

8.      For an order awarding Plaintiffs and the Class their reasonable attorneys' fees, expenses, and costs of suit pursuant to all applicable laws that allow such relief, including but not limited to California Civil Code §1021.5; and

9.      For all other relief that is just and equitable in the circumstances, whether in law or equity.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury to the full extent permitted by law on all counts that permit trial by jury.

DATED this 26th day of May, 2023.

TOUSLEY BRAIN STEPHENS PLLC


By: s/ *Kim D. Stephens*
  Kim D. Stephens, WSBA #11984
  kstephens@tousley.com
  Rebecca L. Solomon, WSBA #51520
  1200 Fifth Avenue, Suite 1700
  Seattle, Washington 98101
  Telephone:  206.682.5600/Fax: 206.682.2992

ZIMMERMAN REED LLP

By: s/ Hart. L. Robinovitch
  Hart L. Robinovitch (*pro hac vice forthcoming*)
  hart.robinovitch@zimmreed.com
  14646 N. Kierland Blvd., Suite 145
  Scottsdale, AZ 85254
  Telephone: 480.348.6400

By: s/ Zachary J. Freese
  Zachary J. Freese (*pro hac vice forthcoming*)
  zachary.freese@zimmreed.com
  80 S. South 8th Street, Suite 1100
  Minneapolis, MN 55402
  Telephone: (612) 341-0400

*Attorneys for Plaintiffs and the Putative Class*

CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW; CONVERSION; VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; AND RESITUTION/UNJUST ENRICHMENT - 50

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992