THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RENEE VIVEROS, and CHRISTINE BIAS, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>    v.<br><br>AUDIBLE, INC., a Delaware Corporation,<br><br>               Defendant. | Case No.: 2:23-cv-00925-RAJ<br><br>**DEFENDANT AUDIBLE, INC.'S MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br><u>Note on Motion Calendar</u>:<br>September 13, 2023<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

BACKGROUND ..................................................................................2

    A.    Plaintiffs And Their Claims. ........................................................2

    B.    Plaintiffs Consented To Audible's Automatic Renewal Terms..................2

    C.    Plaintiffs Intentionally Omit Their Sign-Up Acknowledgment Emails. ..........................................................................4

    D.    Plaintiffs Were Not Prevented From Cancelling Their Memberships..........................................................................4

ARGUMENT ..................................................................................5

    A.    Plaintiffs Fail to State Any Viable Claim. ..................................5

        1.    Plaintiffs Do Not Plead Viable UCL Or CLRA Claims. .................6

            a.    Plaintiffs Lack Statutory Standing. .....................6

            b.    Plaintiffs Fail To Allege Any Violation Of The ARL....................................................................9

            c.    Plaintiffs Fail To Allege Any UCL Or CLRA Violation Independent of the ARL. ...............................14

            d.    Plaintiffs Fail To Allege Reliance, Causation, Or Injury....................................................................15

        2.    Plaintiffs' Conversion And Unjust Enrichment Claims Are Duplicative And Fail With Their ARL-Predicated Claims............16

    B.    Plaintiffs Lack Standing To Seek Restitution Or Injunctive Relief..........17

        1.    Plaintiffs Cannot Seek Restitution. ..................................17

        2.    Plaintiffs Cannot Seek Injunctive Relief.........................18

CONCLUSION..................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arnold v. Hearst Mag. Media, Inc.*,
No.: 19-cv-1969-WQH-MDD, 2020 WL 3469367 (S.D. Cal. June 25, 2020)............ 3, 6-7, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).......................................................................................................5, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................................5, 8

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ..............................................................................................18

*Debono v. Cerebral Inc.*,
No. 22-cv-03378, 2023 WL 300141 (N.D. Cal. Jan. 18, 2023)....................................6, 15-16

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) .......................................................................................11

*Ekin v. Amazon Servs., LLC*,
84 F. Supp. 3d 1172 (W.D. Wash. 2014) ............................................................................11

*Gershfeld v. Teamviewer US, Inc.*,
No. SACV2100058CJCADSX, 2021 WL 3046775 (C.D. Cal. June 24, 2021).....................17

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017) ...............................................................................14

*Hall v. Time, Inc.*,
857 F. App'x 385 (9th Cir. 2021) ................................................................................. *passim*

*In re Tobacco Cases II*,
240 Cal. App. 4th 779 (2015) .............................................................................................17

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ..............................................................................................6

*Kimzey v. Yelp Inc.*,
21 F. Supp. 3d 1120, 1122 (W.D. Wash. 2014).................................................................5-6

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ..............................................................................................3

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. 2020) .......................................................................................11

# TABLE OF AUTHORITIES
## (CONTINUED)

Page(s)

*Licea v. Brown Sugar, LLC*,
   No. B310487, 2023 WL 543456 (Cal. Ct. App. Jan. 27, 2023)..................................7

*Lopez v. YP Holdings, LLC*,
   No. CV 18-8791, 2019 WL 2895190 (C.D. Cal. March 26, 2019) ...................14, 18

*Mayron v. Google LLC*,
   54 Cal. App. 5th 566 (2020) ..........................................................................7

*Rutter v. Apple Inc.*,
   No. 21-CV-04077-HSG, 2022 WL 1443336 (N.D. Cal. May 6, 2022).........................7, 9-10

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) .........................................................................17

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016), *as revised* (May 24, 2016)....................................................13

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) .........................................................................7

*Steckman v. Hart Brewing*,
   143 F.3d 1293 (9th Cir. 1998) .......................................................................7

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009).......................................................................................18

*Turnier v. Bed Bath & Beyond Inc.*,
   No.: 3:20-cv-00288-L-MSB, 2021 WL 4209473 (S.D. Cal. Sept. 16, 2021)....................15, 17

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ..................................................................6, 12

*Walkingeagle v. Google LLC*,
   No. 3:22-cv-00763, 2023 WL 3981334 (D. Or. June 12, 2023).............................12

*Wiseley v. Amazon.com, Inc.*,
   709 F. App'x 862 (9th Cir. 2017) ...............................................................11

*Zeller v. Optavia, LLC*,
   No. 22-cv-434, 2022 WL 17858032 (S.D. Cal. Dec. 22, 2022) ...................... *passim*

DEF. AUDIBLE'S MOTION TO DISMISS
COMPLAINT
CASE NO.: 2:23-CV-00925-MLP

- ii -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON  98101

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page(s)**

STATUTES

Automatic Renewal Law, Cal. Bus. & Prof. Code §§ 17600, *et seq.* ................................... *passim*

Consumers Legal Remedy Act, Cal. Civ. Code §§ 1770(a)(9), (14) .................................... *passim*

Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* .................................... *passim*

OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ....................................................................................................................6, 12

Fed. R. Civ. P. 12(b)(1) ...................................................................................................................17

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... *passim*

DEF. AUDIBLE'S MOTION TO DISMISS
COMPLAINT
CASE NO.: 2:23-CV-00925-MLP

- iii -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

1

**INTRODUCTION**

2     Plaintiffs Renee Viveros and Christine Bias signed up for the popular Audible service,

3 which provides online access to millions of audiobooks and other content, and renews monthly

4 until the member cancels.  Viveros continues to pay for her Audible membership to this day, while

5 Bias cancelled her membership after seven months.  Plaintiffs claim that they were unaware that

6 their monthly memberships would automatically renew.  They contend that Audible violated

7 California law by failing to adequately disclose its auto-renewal terms and by "hindering" their

8 ability to cancel their memberships.  But Plaintiffs' own allegations contradict that central thesis;

9 their Complaint makes clear that Audible *did* tell Plaintiffs about the membership's renewal terms

10 and how to cancel.

11     Plaintiffs assert claims for deceptive business practices under California's Unfair

12 Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA"), predicated on alleged

13 violations of the state's Automatic Renewal Law ("ARL").  They also bring claims for conversion

14 and unjust enrichment, also predicated on the ARL.  But Plaintiffs' Complaint incorporates by

15 reference the enrollment webpage that Plaintiffs allegedly saw when completing their Audible

16 purchases, which discloses in clear, conspicuous text and plain language, immediately above the

17 call-to-action button, that "<u>Membership continues until cancelled for $14.95/mo. + taxes.  Cancel

18 anytime via Account Details.</u>"  That disclosure satisfies the ARL.

19     Plaintiffs likewise contradict their conclusory assertion that Audible's cancellation process

20 violates the ARL.  Plaintiff Bias concedes that she was able to cancel online, and Plaintiff Viveros

21 intentionally opted not to cancel so she could continue accessing her audiobooks through Audible.

22 These admissions establish that Audible's alleged conduct caused Plaintiffs no injury, which

23 means they lack standing to assert claims under the UCL and CLRA.  Plaintiffs also cannot seek

24 restitution or injunctive relief, as they have not pled that they lack an adequate remedy at law or

25 face a non-conjectural threat of future harm.

26     For these reasons, and as discussed further below, the Court should dismiss the Complaint

27 in its entirety with prejudice.

28

1

**BACKGROUND**

2

**A.      Plaintiffs And Their Claims.**

3

Plaintiff Renee Viveros alleges that, in January 2020, she signed up for an Audible "gift

4

trial," purportedly with the understanding that it entailed a one-time cost of $14.95.  Compl. ¶ 62.

5

She further alleges that she has maintained her Audible membership since that time, and that during

6

this more than three-year period she has been charged $14.95 per month, for a total of $523.25.

7

*Id.* ¶¶ 65-66, 68-69.  Viveros was still an Audible member when she filed the Complaint, and she

8

asserts no intention of cancelling.  *Id.*  Plaintiff Bias alleges that she signed up for Audible in May

9

2022 using "a one-month free credit" from Audible.  *Id.* ¶ 71.  She alleges that, after her one-month

10

free trial, Audible charged her $14.95 per month from June through December 2022 (for a total of

11

$104.65), until she cancelled her membership online.  *Id.* ¶¶ 74, 76.

12

Plaintiffs both claim to have been unaware that their Audible transactions would result in

13

an automatically renewing monthly membership, and they contend that they did not consent to that

14

outcome.  Compl. ¶¶ 64-67, 74-77.  Plaintiffs claim that Audible violated the ARL and that the

15

Audible services they received were "unconditional free gifts by operation of law."  *Id.* ¶¶ 67, 77.

16

Plaintiffs seek to represent a class comprising of:

17
18
19
20

> All individuals who (i) enrolled in an Audible Subscription while in California,
> within the applicable statute of limitations, up to and including the filing of this
> complaint, and who were subsequently assessed an automatic renewal fee
> associated with their Audible Subscription; or (ii) attempted to cancel an Audible
> Subscription while in California since July 1, 2022, and who were subsequently
> assessed an automatic renewal fee associated with their Audible Subscription.

21

*Id.* ¶ 81.

22

**B.      Plaintiffs Consented To Audible's Automatic Renewal Terms.**

23

Plaintiffs allege that Audible did not adequately present them with automatic renewal terms

24

or obtain their consent before they signed up for Audible memberships.  Compl. ¶¶ 64-67, 74-77.

25

But their Complaint reveals otherwise.  Plaintiffs incorporate a screenshot of Audible's current

26

enrollment page for desktop computers, which they allege is "substantively the same" as the

27

webpage they saw when signing up for Audible.  *Id.* ¶¶ 41, 63, 72.  The screenshot image as pasted

28

into the Complaint is difficult to see because of the small scale, so Audible has submitted a larger

version of the same screenshot to aid the Court's review.  *See* Declaration of Brian D. Buckley ("Buckley Decl."), Ex. 1.  The Court may consider documents that are "incorporated by reference" into a complaint, *i.e.*, documents "whose contents are alleged in a complaint and whose authenticity no party questions."  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("The rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material."); *see also Arnold v. Hearst Mag. Media, Inc.*, No.: 19-cv-1969-WQH-MDD, 2020 WL 3469367, at *4 (S.D. Cal. June 25, 2020) (on motion to dismiss, court considered copy of webpage submitted by defendant because plaintiff had attached "an identical, but less legible" version).

Reviewing Audible's enrollment page makes clear that there was nothing hidden, unclear, or confusing about Audible's membership disclosures:



Buckley Decl., Ex. 1.  That page discloses, in underlined font, that the user's Audible "Membership continues until cancelled for $14.95/mo. + taxes. Cancel anytime via Account Details."  *Id.*  Those terms are the only underlined words on the page, which causes them to stand out starkly from the other text.  Importantly, those terms appear directly above the call-to-action ("CTA") button, which states: "Try for $0."  And the paragraph above the CTA button also expressly informs the

user that "[b]y clicking 'Try for $0.00," the user is agreeing to Audible's terms and the user "permit[s] Audible to charge your default card or another card on file." *Id.*

The totality of the enrollment page further undermines Plaintiffs' claim that they did not understand they would be charged when their free trial ended. The top of the page states: "You're in the home stretch for your 30-day, free trial!" Compl. ¶ 41; Buckley Decl., Ex. 1. And Amazon expressly discloses (in two different places) that, after 30 days, Plaintiffs would be required to pay $14.95 each month for an Audible membership. *Id.* Consistent with that, directly below the "free trial" statement, Plaintiffs were required to provide their credit card information to proceed; that obviously would be unnecessary if they were not going to be charged following the trial. And after Plaintiffs entered their credit card information, they were required to check the box stating: "Use this card for your membership and purchases." *Id.* In this context, reasonable consumers would know that a "free trial" is just that, a trial period to sample a product or service for free, after which they will be required to pay a fee to continue accessing the service. In sum, no reasonable consumer who proceeds through the Audible enrollment page could be misled or confused; the disclosures make clear that customers will be charged an Audible membership fee when their free trial ends.

**C.     Plaintiffs Intentionally Omit Their Sign-Up Acknowledgment Emails.**

Plaintiffs both admit that Audible sent them "an email confirming" their membership sign-ups, but they make a conclusory allegation that the acknowledgement was inadequate. Compl. ¶¶ 64, 73. Yet Plaintiffs conspicuously fail to quote from or attach those acknowledgment emails, which Plaintiffs easily could and should have done. As such, Plaintiffs have alleged only conclusions, but no *facts*, from which the Court could conclude that Audible's acknowledgement emails violate the ARL.

**D.     Plaintiffs Were Not Prevented From Cancelling Their Memberships.**

Plaintiffs claim that Audible "hindered" their ability to cancel their memberships. Compl. ¶¶ 29, 58. But their allegations demonstrate exactly the opposite. Plaintiff Bias concedes that she "was able to cancel her Audible subscription online" *on her first attempt*, in December 2022. *Id.* ¶¶ 76-77. She tries to sidestep that fact by asserting that Audible's "cancel membership" link was

"inconspicuous." *Id*.  Yet, as with her acknowledgement email, Bias provides no screenshot or other evidence to support this conclusory allegation. *Id*.

For her part, Plaintiff Viveros entirely ignores Audible's online cancellation process. Instead, she alleges that she tried to cancel her membership through Audible's customer service telephone line in December 2021.  But, crucially, she does not allege that she was unable to cancel through customer service.  Instead, she admits that *she changed her mind, decided not to cancel, and remains an Audible member to this day*. *Id*. ¶ 66.  Viveros acknowledges candidly that she did "not want[] to lose [her] downloaded audiobooks;" in other words, she wanted to continue receiving the benefits of an Audible membership.[1] *Id*.  She does not allege that Audible failed to offer an online cancellation process.  Nor does she (or could she) identify any specific deficiencies in the online cancellation process because she never used it.  Instead, Viveros alleges that she "[found] no online cancellation feature." *Id*.  But she does not say what steps she took to find that feature or whether she visited the Audible "Account Details" webpage, as she was clearly instructed to do on the Audible enrollment page.  Compl. ¶ 41; Buckley Decl., Ex. 1 ("<u>Cancel anytime via Account Details.</u>").

Thus, the Complaint establishes only that Bias was readily able to cancel online and that Viveros opted not to cancel in order to retain her Audible benefits.

## ARGUMENT

### A.    Plaintiffs Fail to State Any Viable Claim.

Pursuant to Rule 12(b)(6), the Court should dismiss Plaintiffs' Complaint for failure to state a claim.  To survive a motion to dismiss, a complaint must allege facts sufficient to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Likewise, "[t]hreadbare

---

[1]  Although not a basis for this motion to dismiss, Plaintiff Viveros would not have lost access to her purchased audiobooks had she decided to cancel her Audible membership.  Although Audible customers will lose unused credits if they cancel their memberships before using them, customers who cancel their memberships retain access to their purchased audiobooks.  *See* https://help.audible.com/s/article/what-happens-to-my-purchased-audiobooks-if-i-cancel-my-audible-premium-plus-membership?language=en_US  ("When you purchase a title with a credit or credit card from Audible, it is yours to keep!").

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id.*; *Kimzey v. Yelp Inc.*, 21 F. Supp. 3d 1120, 1122 (W.D. Wash. 2014) (Jones, J.) (same). Plaintiffs' claims rest entirely on a collection of unsupported labels and conclusions, rather than facts, and therefore, fall far short of this test.

Moreover, Plaintiffs' claims are all subject to the heightened pleading requirements of Rule 9(b)*.* Plaintiffs allege an overarching fraudulent scheme by Audible, a purported "artifice devised and employed by Defendant to lure thousands of consumers" and to "bilk[] them for unauthorized" fees. Compl. ¶ 29; ¶ 6 ("Defendant continuously represents that the automatic charges are lawful and owed when they are not"). Because Plaintiffs' claims sound in fraud, they must be pled with factual specificity as required by Rule 9(b). *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL."); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (Rule 9(b)'s standard applies even "[i]n cases where fraud is not a necessary element of a claim" if plaintiffs "allege[] in the complaint that the defendant has engaged in fraudulent conduct."); *Zeller v. Optavia, LLC*, No. 22-cv-434, 2022 WL 17858032, at *12 (S.D. Cal. Dec. 22, 2022) (Rule 9(b) applies to UCL and CLRA claims predicated on ARL violations). Plaintiffs come nowhere close to meeting that heightened pleading standard.

### 1. Plaintiffs Do Not Plead Viable UCL Or CLRA Claims.

Plaintiffs' UCL and CLRA claims fail as a matter of law for two independent reasons. First, Plaintiffs lack standing to pursue UCL or CLRA claims because they suffered no cognizable harm. Second, Plaintiffs' UCL and CLRA claims are predicated on ARL violations, but Plaintiffs have not adequately pled any such violation.

#### a. Plaintiffs Lack Statutory Standing.

Plaintiffs' UCL and CLRA claims are predicated on alleged violations of the ARL. "The ARL doesn't include a private right of action," but "consumers may bring claims to enforce the ARL under California's Unfair Competition Law … and Consumer Legal Remedies Act." *Debono v. Cerebral Inc.*, No. 22-cv-03378, 2023 WL 300141, at *1 (N.D. Cal. Jan. 18, 2023); *Hearst*, 2020

WL 3469367, at *7 (same).  Plaintiffs must, however, separately meet the statutory standing requirements of the UCL and CLRA, which both require Plaintiffs to plead that they "suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition."  *Mayron v. Google LLC*, 54 Cal. App. 5th 566, 574 (2020) (standing requirements under the UCL); *Rutter v. Apple Inc.*, No. 21-CV-04077-HSG, 2022 WL 1443336, at *4 (N.D. Cal. May 6, 2022) (explaining that these same requirements apply for standing under the CLRA).

Importantly, the California Court of Appeal has made clear that "the unconditional gift provision of the automatic renewal law"—which "creates a right to retain a product already received"—"***does not confer standing***."  *Mayron*, 54 Cal. App. at 575-76 (emphasis added). Ignoring this, the crux of Plaintiffs' theory is that they "suffered economic loss because Defendant … charged their Billing Information, for [services] that were unconditional free gifts" pursuant to the ARL.  Compl. ¶¶ 86; *see also id*., 18, 38, 60, 67, 77.  But that is plainly not sufficient to confer standing.  *Mayron*, 54 Cal. App. at 575-76; *see also Licea v. Brown Sugar, LLC*, No. B310487, 2023 WL 543456, at *3-6 (Cal. Ct. App. Jan. 27, 2023) (reaffirming *Mayron*).

Rather, to establish standing based on an alleged ARL violation, a plaintiff must show either (1) that the defendant's "failure to adequately disclose" automatic renewal terms "caused plaintiff to spend money he otherwise would not have spent," or (2) that defendant's "failure to provide an easy cancellation mechanism caused plaintiff to continue to spend money on a service he would have discontinued."  *Id.* at 575.  Plaintiffs do not satisfy either standard.

Plaintiffs first attempt to establish injury by alleging that, absent Audible's purported ARL violations, Plaintiffs would not have signed up for Audible memberships and subsequently would have cancelled their memberships.  Compl. ¶¶ 67, 77.  But those unsupported allegations are contradicted by the Complaint itself and, as such, the Court is not required to accept those allegations as true.  *See, e.g.*, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001) (rejecting conclusory allegations and dismissing claims contradicted by the complaint's other allegations); *Steckman v. Hart Brewing*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.").  The Complaint contradicts Plaintiffs' core theories in several ways:

1      *First*, both Plaintiffs allege that a compliant description of Audible's automatic renewal

2  terms would have prevented them from enrolling.  Compl. ¶¶ 63, 67, 73, 77.  But they separately

3  allege that Plaintiffs "did not see" the disclosure of the automatic renewal terms on Audible's

4  enrollment page.  *Id.* ¶¶ 63, 72.  They make that claim even though the enrollment page disclosed

5  the terms in underlined text directly above the CTA button that Plaintiffs clicked to enroll.  *Id.*

6  ¶ 41; Buckley Decl., Ex. 1.  Thus, by Plaintiffs' own admission, it would not have mattered how

7  much detail Audible provided on the enrollment page or what words it used, because Plaintiffs

8  allegedly chose not to review the short, clear, and prominent disclosures directly above the CTA

9  button.

10      *Second*, Plaintiff Viveros has not pled either injury or causation because she *intended* to

11  subscribe to a paid Audible membership.  Viveros alleges that she "signed up for an Audible

12  Subscription, on a gift trial basis, through the Audible Platform on or around January 2020 *for*

13  *$14.95*, exclusive of any applicable taxes."  Compl. ¶ 62 (emphasis added).  She does not explain

14  what she means by a "gift trial," but does make clear that she agreed to pay $14.95.  And the

15  Complaint acknowledges that $14.95 is the monthly price for an Audible membership.  *Id.* ¶ 53.

16  Then, when she allegedly became aware that she was being charged a monthly fee, Viveros chose

17  not to cancel her membership.  She continued to pay and evidently remains an Audible member to

18  this day.  *Id.* ¶ 66.  Those facts belie any contention that Viveros would not have paid $14.95 in

19  the first place had she known it would renew monthly.  Stated differently, it is simply not plausible

20  that Viveros would not have agreed to continue paying $14.95 per month for Audible when that is

21  precisely what she has chosen to do *for over three years*.  *Twombly*, 550 U.S. at 547.

22      *Third*, Plaintiff Bias also has not pled either injury or causation.  She concedes that, as soon

23  as she decided to cancel her Aubible membership, she was able to do so.  Compl. ¶ 76.  Thus, Bias

24  paid Audible membership fees for seven months because she chose not to cancel her membership

25  sooner.  *Id.* ¶ 77.  Importantly, Bias does not allege that she was unaware she was being charged

26  each month.  That fact deeply undercuts the notion that Bias was dissatisfied with Audible.  But,

27  more to the point, Bias's conduct defeats any claim that Audible caused her alleged injury.  Had

28  she simply cancelled before the 30-day trial ended, she would have incurred no charges at all.

AUDIBLE'S MOTION TO DISMISS      - 8 -      **FENWICK & WEST LLP**
CASE NO.: 2:23-CV-00925-RAJ                    401 UNION STREET, 5TH FLOOR
                                        SEATTLE, WASHINGTON 98101

In sum, because Plaintiffs fail to allege injury or causation from Audible's alleged conduct, they cannot establish statutory standing to pursue their UCL and CLRA claims.

### b. Plaintiffs Fail To Allege Any Violation Of The ARL.

As the predicate for their UCL and CLRA claims, Plaintiffs contend that Audible violated the ARL by not (1) adequately disclosing Audible's automatic renewal terms, (2) obtaining Plaintiffs' consent to those terms, (3) sending proper acknowledgment of Plaintiffs' memberships, and (4) providing an online cancellation process. But Plaintiffs have failed to allege specific facts to support a violation of *any* of those four requirements.

### i. Audible Adequately Disclosed Its Automatic Renewal Terms.

Plaintiffs' Complaint establishes that Audible satisfied the ARL by adequately disclosing Audible's automatic renewal terms. ARL Section 17602(a)(1) requires businesses to "present the automatic renewal offer terms … in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity … to the request for consent to the offer." Section 17601(c) in turn defines a "clear and conspicuous" disclosure, in part, as one that appears "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Audible's enrollment page—which discloses, directly above the CTA button, that the consumer's "<u>Membership continues until cancelled for $14.95/mo. + taxes. Cancel anytime via Account Details</u>"—plainly satisfies those requirements, and Plaintiffs arguments to the contrary fall short.

*First*, Plaintiffs claim that Audible's disclosure appears in an "inconspicuous and tiny font." Compl. ¶ 41. But that is because the Complaint includes a shrunken, grainy image of the enrollment page. *Id*. Indeed, based on the image in the Complaint, even the button one clicks to start a membership would be illegible. But when the Court reviews the accurate image, as it would have appeared on Plaintiffs' computer or mobile screens, the auto-renewal disclosure is neither tiny nor inconspicuous. *See* Buckley Decl., Ex. 1. It is in the same size font as the other text on the enrollment page, and is the only underlined text on the page. Thus, it is set off from and in contrast with the other text on the page, which is all the ARL requires. *See, e.g.*, *Rutter*, 2022 WL

1443336, at *6 (rejecting "vague[]" allegations that disclosure was not conspicuous and holding that contrasting font satisfied the ARL); *Hall v. Time, Inc.*, No.: SACV 19-01153-CJC, 2020 WL 2303088, at *3 (C.D. Cal. March 13, 2020), *aff'd by* 857 F. App'x 385 (9th Cir. 2021) (similar).

*Second*, Plaintiffs allege without explanation that the auto-renewal disclosure is not within "visual proximity" of the "request to complete the purchase."  Compl. ¶ 54.  That is clearly wrong. The disclosure is *directly above*, with very little interstitial space, the CTA button that Plaintiffs were required to click in order to sign up for their Audible membership.  Indeed, it is difficult to imagine how the disclosure could be in any closer proximity to the button.  S*ee, e.g.*, *Hall*, 2020 WL 2303088, at *3 (disclosure was "plainly sufficient to satisfy the ARL's proximity requirement" where it was located "less than forty words and one small image removed from the required notice.").

*Third*, Plaintiffs allege that Audible's disclosure on the enrollment page is not "complete" because it omits a detailed description of exactly where on the Audible "account page" a user can cancel, and "the precise date of when consumers' Billing information will be charged."  Compl. ¶¶ 52-53, 63, 73.  But the ARL does not require such details and Plaintiffs are not free to engraft their own requirements onto the statute.  As the Ninth Circuit has recognized, the ARL must he applied *as written* by the California Legislature.  *See Hall v. Time, Inc.*, 857 F. App'x 385, 386-87 (9th Cir. 2021) ("[W]e decline to rewrite the [ARL] and impose a requirement that is absent from the text.").

Contrary to Plaintiffs' claims, the ARL requires disclosure of the "automatic renewal offer terms," which Section 17601(b) defines, in part, as the following: "[t]hat the subscription or purchasing agreement will continue until the consumer cancels;" "[t]he description of the cancellation policy that applies to the offer;" "[t]he recurring charges …;" and "[t]he length of the automatic renewal term …."  Audible's disclosure provides all of this information.  It expressly states that the "Membership continues until cancelled."  It expressly states the cancellation policy applicable to the offer, *i.e.*, "Cancel anytime," and directs the consumer to the "Account Details" page to cancel.  It expressly states that the recurring charge is "$14.95/mo + taxes."  Finally, it expressly states the renewal term, *i.e.*, monthly until the membership is cancelled.  In short,

Audible's disclosure literally complies *to the letter* with the ARL, meeting each and every requirement. *See Hall*, 857 F. App'x at 386 (the Ninth Circuit rejected plaintiff's efforts to expand the ARL's requirements, holding that "[plaintiff] cites no authority and offers no reasoning for more stringent requirements than those required by the statute's text.").

### ii.    Audible Obtained Consent To Its Automatic Renewal Terms.

Contrary to their conclusory allegations, Plaintiffs consented to Audible's auto-renewal terms. ARL Section 17602(a)(1) requires businesses to "first obtain[] the consumer's affirmative consent" before charging the consumer's method of payment. The Complaint concedes, as it must, that Audible's enrollment page "requests consent to the automatically renewing subscriptions." Compl. ¶ 54. To sign up for Audible, Plaintiffs were required to click on the "Try for $0.00" CTA button. *See id.* ¶¶ 41, 52-54, 63, 72; Buckley Decl., Ex. 1. The disclosure directly above the CTA button explains that, "By clicking 'Try for $0.00,' you agree to our Conditions Of Use and Amazon's Privacy Notice **and permit Audible to charge your default card or another card on file**." *Id.* (emphasis added). That is all the ARL requires and is more than sufficient to establish Plaintiffs' consent for Audible to charge their credit cards. *See, e.g.*, *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484-85 (9th Cir. 2020) (consumer consented to terms by "click[ing] a 'Sign In' button, directly under which the following language appeared: '*By clicking Sign In, you agree to the Turbo Terms of Use, TurboTax Terms of Use, and have read and acknowledged our Privacy Statement.*'"); *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394-95 (9th Cir. 2020) (consent established where consumer "clicked the 'Place Order' button when placing an order for tickets, where directly above the button, the website displayed the phrase, 'By clicking 'Place Order,' you agree to our Terms of Use.'"); *Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 863-64 (9th Cir. 2017) (holding that customers validly agree to Amazon's Conditions of Use whenever making a purchase on Amazon's website because the terms were linked next to the call-to-action button); *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1173 (W.D. Wash. 2014) (same).

Plaintiffs criticize Audible for not making consumers read through Audible's entire Conditions of Use before granting consent. Compl. ¶ 56. In the Ninth Circuit, it is very clear that is *not* required. *See, e.g.*, *Dohrmann*, 823 F. App'x at 484-85; *Ticketmaster*, 817 F. App'x at 394-

95.  Nor does the ARL include that requirement.  Plaintiffs also allege that Audible breached the ARL by failing to make Plaintiffs click a separate "checkbox" for consent.  Compl. ¶ 56.  Again, the ARL includes no such requirement, and another district court recently rejected that exact argument, holding that "[t]he ARL does not specify requiring a checkbox to satisfy affirmative consent."  *Walkingeagle v. Google LLC*, No. 3:22-cv-00763, 2023 WL 3981334, at *5 (D. Or. June 12, 2023) ("Plaintiffs' argument that Defendants violated the ARL in part by failing to require 'consumers to select or click a 'checkbox' next to the automatic renewal offer terms to complete the checkout process,' [] has no source within the language of the ARL."); *see also Hall*, 857 F. App'x at 387 ("Had the legislature intended to require a consumer's affirmative consent to the automatic renewal terms specifically, it could have omitted the words 'the agreement containing' from the provision.").

### iii.    Plaintiffs Received The Required Acknowledgment.

Plaintiffs make the conclusory claim that Audible failed to provide an adequate acknowledgment of their auto-renewing subscriptions, but they allege literally no facts to support that contention.  ARL Section 17602(a)(3) requires a business to "provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer."  Both Plaintiffs concede that Audible sent them "an email confirming [their] order[s]." Compl. ¶¶ 57, 64, 73.  But they omit *any* information about the contents of those emails; and they conspicuously fail to quote or attach copies of the emails, which they could easily have done.  *Id.* ¶ 57, 73.  Instead, Plaintiff merely recite the statutory requirements.  That approach is exactly the type of "formulaic recitation" that plaintiffs may not rely on at the pleading stage, and it provides none of the detail required to satisfy Rule 9(b).  *Iqbal*, 556 U.S. at 678; *Vess*, 317 F.3d at 1106 (explaining that Rule 9(b) requires specific allegations of "the who, what, when, where, and how" of the alleged misconduct).  Plaintiffs thus fall far short of alleging with specificity a violation of the ARL acknowledgment requirement.

#### iv.     *Audible's Cancellation Process Is Sufficient.*

Finally, Plaintiffs do not plausibly allege that Audible violated the ARL's cancellation requirements.  As the Complaint acknowledges, until July 1, 2022, ARL Section 17602(c) required only an "exclusively online" cancellation feature.  Compl. ¶¶ 30-32; *see also* Stats. 2021, c. 450 (A.B.390), §§ 1-2 (eff. Jan. 1, 2022, operative July 1, 2022).  After that date, the ARL added a requirement that consumers be allowed to terminate online "without engaging any further steps that obstruct or delay the consumer's ability to terminate," through either (i) "[a] prominently located direct link or button which may be located within either a customer account or profile …," or (ii) "an immediately accessible termination email formatted and provided by the business that a consumer can send to the business without additional information."  *Id.*  Neither Plaintiff was subjected to a cancellation process that violated the ARL.

With respect to Plaintiff Viveros, she alleges only that she tried to cancel her membership a single time *in December 2021*, before changing her mind and opting to continue her Audible membership.  *See* Compl. ¶ 66.  At that time, the ARL required only an "exclusively online" cancellation feature and the Complaint does *not* allege that Audible failed to provide one.  *Id.*  Thus, Viveros does not allege any violation of the ARL as it existed when she allegedly tried to cancel.  *See Hall*, 2020 WL 2303088 at *5 (dismissing CLRA claim predicated on ARL provision that "was not added to the ARL until *after* the parties executed the agreement") (emphasis in original).  And Viveros has no standing to bring a claim for alleged violations of the *post*-July 1, 2022 version of the ARL because she admittedly never tried to cancel under that statute.  Compl. ¶ 66; *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (Article III standing requires "an injury in fact [] that is fairly traceable to the challenged conduct of the defendant.").

As for Plaintiff Bias, she does not dispute that Audible provided an "exclusively online" cancellation feature; to the contrary, she concedes that she was able to cancel online, in one try.  Compl. ¶ 76.  Instead, Bias resorts again to conclusory allegations, saying that the link to cancel violated the post-July 1, 2022 ARL because the link was not "prominently located."  *Id.* ¶¶ 45, 76.  Yet the Complaint conveniently omits a screenshot of the relevant webpage.  *Id.* ¶¶ 45, 76.  Bias

criticizes Audible's cancellation process also because Audible gave her the option to pause, rather than cancel, her membership and asked her to complete a survey.  *Id.* ¶¶ 47-48, 76.  But nothing in the ARL (or any other law for that matter) makes such basic customer service features impermissible.  The ARL prohibits only "obstruct[ion] or delay" of cancellation; yet Bias concedes that she "successfully" cancelled on her first attempt.  *Id.* ¶ 76.

In sum, Plaintiffs do not allege any violation of the ARL, which is fatal to their UCL and CLRA claims predicated on that statute.  *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017) ("If a plaintiff cannot state a claim under the predicate law, however, [the UCL] claim also fails.")  (citation omitted); *Lopez v. YP Holdings, LLC*, No. CV 18-8791, 2019 WL 2895190, at *4 (C.D. Cal. March 26, 2019) ("Plaintiff's UCL claim fails to the extent it is predicated on her claim for violation of the ARL."); *Zeller*, 2022 WL 17858032, at *12-13 (dismissing CLRA claim for failure to allege ARL violations with specificity).

### c.    Plaintiffs Fail To Allege Any UCL Or CLRA Violation Independent of the ARL.

Plaintiffs' contention that Audible violated the UCL and CLRA independently of the alleged ARL violations cannot rescue the claims, as Plaintiffs rely on threadbare and cursory allegations that fail to state a claim.  Compl. ¶¶ 99, 121-22.

Plaintiffs allege that Audible violated the CLRA by misrepresenting or omitting its membership's "characteristics, uses, and/or benefits," advertising goods "without the intent to sell them as advertised," and falsely representing that a transaction "conferred or involved rights, remedies, or obligations."  Compl. ¶ 122 (citing Cal. Civ. Code §§ 1770(a)(5), (9), (14)).  Plaintiffs also predicate a UCL claim for "unlawful" practices on these same purported CLRA violations.[2] *Id.* ¶ 99.  Yet Plaintiffs do not allege any new facts to support these claims and instead simply refer to their flawed ARL allegations.  *Id.* ¶ 122 (referring to "[t]he acts and practices of Defendant as described herein").  The claims all fail to the extent Plaintiffs purport to base them on a misrepresentation, as Plaintiffs do not specifically identify a single advertisement or representation

---

[2]  Plaintiffs' claim under the "unfair" prong of the UCL is predicated entirely on the ARL (Compl. ¶ 100) and is therefore defeated by the Complaint's failure to allege any ARL violation.

by Defendant that they say is false.  As in *Turnier v. Bed, Bath & Beyond Inc.*, where the court dismissed similar CLRA claims, Plaintiffs "do[] not allege Defendant made a representation to [them] that [a subscription] did not automatically renew."  517 F. Supp. 3d 1132, 1137 (S.D. Cal. 2021).  Nor do Plaintiffs allege that their Audible memberships "did not cost th[e] amount [advertised] or the benefits were not as advertised."  *Id.*  And any omission-based theory fails for the same reasons, discussed above, that Plaintiffs' allegations that Audible failed to make ARL-compliant disclosures fail.  *See, e.g.*, *Hearst*, 2020 WL 3469367, at *9 (dismissing omission-based CLRA claim where "[p]laintiffs fail[ed] to state facts that support an inference that Defendants failed to adequately disclose the terms of the automatic renewal program under the Automatic Renewal Law.").  Plaintiffs thus fail to allege any UCL or CLRA violations independent of their defective ARL-predicated claims.

### d.   Plaintiffs Fail To Allege Reliance, Causation, Or Injury.

In addition to failing to establish a statutory violation, the Complaint does not allege the essential elements of reliance, causation or injury.  Under the UCL and CLRA, Plaintiffs must allege that Audible's alleged violations were an "immediate cause" of injury.  *Zeller*, 2022 WL 17858032, at *9 (citations omitted); *see also Debono*, 2023 WL 300141, at *2 (same).  As shown above, the alleged deficiencies in the disclosure of renewal terms on Audible's checkout page could not have caused Plaintiffs any injury because they allegedly "*did not see*" that disclosure (Compl. ¶¶ 63, 72), even though the disclosure was in legible, underlined font (*see id.* ¶ 41 & Buckley Decl., Ex. 1).  In other words, the Complaint establishes that *Plaintiffs' own failure* to read Audible's ARL-compliant disclosure caused their alleged ignorance of the automatic renewal terms.

Likewise, Plaintiffs have not alleged that the purported complexity of Audible's online membership cancellation process was the immediate cause of any injury.  Plaintiff Viveros does not allege that she tried using the process through Audible's "Account Details" page—as instructed in the clear disclosure she saw when signing up.  *Id.*  Nor does she allege using *any* online cancellation process.  Rather, she allegedly called Audible's customer service line to inquire about cancellation.  Compl. ¶ 66.  This fact alone precludes any showing of causation.  Moreover, after

calling, Plaintiff Viveros *decided* not to cancel.  *Id.*  She never alleges that she was *unable* to cancel—another reason why she falls short of alleging causation.  *Id.*  And by the same token, she was never injured, as she received a service whose benefits she apparently valued and that she continues using to this day.  *Id.*  If she had wanted to cancel after pausing her membership and obtaining additional audiobooks, nothing stopped her from calling back to do so.  Plaintiff Bias also cannot show any injury *caused by* the cancellation process because she was able to cancel when she wanted to.  *Id.* ¶ 76.

Plaintiffs' allegations echo the facts in *Debono v. Cerebral*, where the court dismissed ARL-predicated claims in part because "two of the named plaintiffs don't allege that they complied with Cerebral's cancellation policy—which may have been the true source of their difficulties—and the third named plaintiff, who did follow the process, was promptly able to cancel."  2023 WL 300141, at *2.  As in *Debono*, Plaintiffs have pled themselves out of showing reliance, causation, or injury.

### 2.    Plaintiffs' Conversion And Unjust Enrichment Claims Are Duplicative And Fail With Their ARL-Predicated Claims.

Plaintiffs' claims for conversion and "unjust enrichment/restitution" are duplicative of their ARL-predicated claims and fail for the same reasons.  Compl. ¶¶ 110-17, 130-36.  The conversion claim is premised entirely on "the violations of the ARL referenced" in the complaint.  Compl. ¶ 112.  In *Hall v. Time*, the Ninth Circuit held that, "[b]ecause Plaintiff fails to plausibly allege any ARL violations, the Court also finds that she fails to plausibly state a claim for theft or conversion."  2020 WL 2303088, at *5.  The same is true here.  Likewise, the failure of Plaintiffs' other claims takes down the unjust enrichment claim, which is predicated solely on Audible's alleged "violation of California law."  Compl. ¶ 133.  *See, e.g.*, *Debono*, 2023 WL 300141, at *3 ("Because plaintiffs haven't stated a claim for relief under the UCL [] or CLRA, their unjust-enrichment claim also fails.").

**B.** **Plaintiffs Lack Standing To Seek Restitution Or Injunctive Relief.**

Pursuant to Rule 12(b)(1), the Court should dismiss Plaintiffs' claims for restitution and injunctive relief for lack of subject-matter jurisdiction because Plaintiffs have no standing. *Id.* ¶¶ 106-108, 116, 125, 135.

**1.** **Plaintiffs Cannot Seek Restitution.**

Plaintiffs must "establish that [they] lack[] an adequate remedy at law before securing equitable restitution for past harm," yet they fail to meet this essential condition for standing. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (dismissing claims for equitable restitution under the UCL and CLRA). Specifically, they "must plead inadequate legal remedies in the operative pleading …." *Zeller*, 2022 WL 17858032, at *7; *see also Sonner*, 971 F.3d at 844. The Complaint makes no such allegation. To the contrary, Plaintiffs concede that they have an adequate legal remedy, as they intend to seek *actual damages* under the CLRA. Compl. ¶ 128. In *Zeller*, the court dismissed similar claims for restitution predicated on the ARL where "Plaintiffs request[ed] money damages by way of a refund under the CLRA …." 2022 WL 17858032, at *7. The Court should do the same here.

Moreover, Plaintiffs' request for "restitution," which seeks full refunds, fails because Plaintiffs chose to enjoy the features and benefits of an Audible membership after being notified that the membership would renew. Compl. ¶ 98; *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 802 (2015) (holding that complete refund is not appropriate restitution where product confers benefit to consumer); *Gershfeld v. Teamviewer US, Inc.*, No. SACV2100058CJCADSX, 2021 WL 3046775, at *3 (C.D. Cal. June 24, 2021), *aff'd*, No. 21-55753, 2023 WL 334015 (9th Cir. Jan. 20, 2023) (denying claim for restitution where "the EULA and pages from Defendant's website establish that before purchasing his subscription, Plaintiff was fairly warned that his subscription would automatically renew"). Indeed, Viveros alleges that she declined to cancel her membership so that she could keep her audiobooks and that she remains an Audible member. Compl. ¶¶ 66, 68. And as discussed above, Audible disclosed that the Audible subscription would renew. Under such circumstances, restitution is not available. *See, e.g.*, *Turnier v. Bed Bath & Beyond Inc.*, No.: 3:20-cv-00288-L-MSB, 2021 WL 4209473, at *2 (S.D. Cal. Sept. 16, 2021) (finding no plausible

1   claim for restitution where "the Court cannot infer from the factual allegations that Plaintiffs lacked
2   access to the membership's benefits or knowledge about their re-enrollment. … And the
3   membership at renewal had some value (access to discounts on all purchases and 'free'
4   shipments).").  This flaw is an independent ground for dismissing all restitution claims.

5       These deficiencies require dismissal of Plaintiffs' UCL and unjust enrichment claims *in*
6   *their entirety*, as both sound in restitution.  *Id.* ¶¶ 105-07 (seeking, under the UCL, restitution of
7   all amounts charged for Audible memberships) & ¶¶ 133-35 (same); *see Zeller*, 2022 WL
8   17858032, at *7 (dismissing UCL and unjust enrichment claims in their entirety).  And Plaintiffs
9   are categorically precluded from seeking restitution under the CLRA or through their conversion
10  claim.

11              **2.      Plaintiffs Cannot Seek Injunctive Relief.**

12      Plaintiffs fail also to meet the essential standing requirement for injunctive relief.  They
13  must plausibly allege "an imminent or actual threat of future harm caused by" the conduct that
14  allegedly violates consumer protection statutes.  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956,
15  970 (9th Cir. 2018).  The alleged threat of future injury must rise above the "conjectural or
16  hypothetical" level.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  Here, Plaintiffs
17  cannot show any actual or imminent threat, whether from signing up for or cancelling an Audible
18  subscription.  Neither Plaintiff alleges that she will again try to sign up for an Audible membership.
19  Compl. ¶¶ 68-70; 77-79.  Plaintiff Bias has already cancelled.  And Plaintiff Viveros does not
20  allege that she will try to cancel, nor does she plausibly allege any impediment to successfully
21  cancelling by using the same online process as Plaintiff Bias (or, if she prefers, by calling customer
22  service, as she chose to do previously before changing her mind).  Plaintiffs thus lack standing to
23  seek any injunctive relief against Audible.

24      The Court should therefore dismiss Plaintiffs' claims for restitution and injunctive relief
25  for the independent reason that they lack standing.

26

27

28

1

**CONCLUSION**

2        For the foregoing reasons, the Court should dismiss the Complaint—with prejudice

3   because the Complaint's allegations establish that Audible complies with the ARL and thus

4   preclude Plaintiffs from stating any viable theory of liability premised on that statute.  *See Hall*,

5   2020 WL 2303088, at *6 (dismissing with prejudice similarly flawed claims predicated on the

6   ARL); *Lopez*, 2019 WL 2895190, at *5.

7

8        Dated:  July 31, 2023                    Respectfully submitted,
                                                 FENWICK & WEST LLP
9

10

11       By: */s/ Brian D. Buckley*
                                                 Brian D. Buckley, WSBA No. 26423

12                                               401 Union Street, 5th Floor
                                                 Seattle, WA  98101
13                                               Telephone:  206.389.4510
                                                 Facsimile:  206.389.4511
14                                               Email:      bbuckley@fenwick.com

15                                               Jedediah Wakefield (*pro hac vice*)
                                                 Molly Melcher (*pro hac vice*)
16                                               **FENWICK & WEST LLP**
                                                 555 California Street, 12th Floor
17                                               San Francisco, CA 94104
                                                 Telephone: 415.875.2300
18                                               Facsimile: 415.281.1350
                                                 Email:      jwakefield@fenwick.com
19                                                           mmelcher@fenwick.com

20                                               Charles E. Moulins (*pro hac vice*)
                                                 cmoulins@fenwick.com
21                                               **FENWICK & WEST LLP**
                                                 902 Broadway, Suite 14
22                                               New York, NY 10010
                                                 Telephone:    415.875.2300
23                                               Facsimile:    650.938.5200
                                                 Email:      cmoulins@fenwick.com
24

25                                               Esther D. Galan (*pro hac vice*)
                                                 **FENWICK & WEST LLP**
26                                               228 Santa Monica Boulevard, Suite 300
                                                 Santa Monica, CA 90401
27                                               Telephone: 310.554.5400
                                                 Email:      egalan@fenwick.com
28

                                                 *Attorneys for Defendant Audible, Inc.*

**LCR 7(E) AND 7(G) WORD-COUNT CERTIFICATION**

As required by Western District of Washington Local Civil Rules 7(e) and 7(g), I certify that this memorandum contains 6,755 words.

Dated:  July 31, 2023

FENWICK & WEST LLP


By: */s/ Brian D. Buckley*
 Brian D. Buckley

 Brian D. Buckley, WSBA No. 26423
 401 Union Street, 5th Floor
 **FENWICK & WEST LLP**
 Seattle, WA  98101
 Telephone:  206.389.4510
 Facsimile:   206.389.4511
 Email:        bbuckley@fenwick.com