1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RENEE VIVEROS, et al.,

                     Plaintiffs,

        v.

AUDIBLE, INC.,

                     Defendant.

CASE NO. C23-0925JLR

ORDER

## I.  INTRODUCTION

Before the court is Defendant Audible, Inc.'s ("Audible") motion to dismiss Plaintiffs Renee Viveros and Christine Bias's (collectively, "Plaintiffs") putative class action complaint.  (Mot. (Dkt. # 22); Reply (Dkt. # 26).)  Plaintiffs oppose the motion. (Resp. (Dkt. # 24).)  The court has considered the parties' submissions, the relevant

//

//

//

1  portions of the record, and the governing law.  Being fully advised,[1] the court GRANTS

2  Audible's motion to dismiss.

## II.   BACKGROUND

4         Plaintiffs filed this action against Audible on May 26, 2023.  (*See* Compl.

5  (Dkt. # 1-2).)  They bring this putative class action on behalf of all persons who

6  (1) "enrolled in an Audible Subscription while in California, within the applicable statute

7  of limitations, up to and including the filing of this complaint, and who were

8  subsequently assessed an automatic renewal fee associated with their Audible

9  Subscription," or (2) "attempted to cancel an Audible Subscription while in California

10  since July 1, 2022, and who were subsequently assessed an automatic renewal fee

11  associated with their Audible Subscription."  (*Id.* ¶ 81.)  Plaintiffs raise claims

12  alleging:  (1) violations of the California Unfair Competition Law ("UCL"), California

13  Business and Professions Code § 17200 *et seq.*; (2) conversion; (3) violations of the

14  California Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750 *et

15  seq.*; and (4) "unjust enrichment/restitution."  (Compl. ¶¶ 93-136 (capitalization altered).)

16  Plaintiffs' UCL and CLRA claims, in turn, are based in part on Audible's alleged

17  violations of California's Automatic Renewal Law ("ARL"), California Business and

18  Professions Code § 17600 *et seq.*  (*Id.* ¶¶ 96, 123.)  Plaintiffs seek damages, restitution,

19  declaratory relief, private injunctive relief, and public injunctive relief.  (*Id.* at 49-50.)

20         The court describes the relevant factual background below.

21

22
_____

[1]  The parties request oral argument.  (*See* Mot. at 1; Resp. at 1.)  The court, however, concludes that oral argument would not be helpful to its disposition of the motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

**A.      Audible's Subscription Enrollment and Cancellation Processes**

Audible "is an international media company that produces and distributes audiobooks, podcasts, and other similar media online via . . . a subscription-based business model." (*Id.* ¶ 1.)  To attract new customers, Audible advertises 30-day "gift trial[s]," which users may sign up for through audible.com, amazon.com, or Audible's mobile app. (*Id.* ¶¶ 3, 11, 40; *see also* Mot. at 4.)  According to Plaintiffs, "[w]hen consumers sign up for an Audible Product," Audible "enrolls them into an . . . automatic renewal subscription program." (Compl. ¶ 1.)

The process any given customer uses to enroll in an Audible Subscription is "substantially the same, regardless of the medium used and location of the consumer." (*Id.* ¶ 41.)  Before subscribing, customers must input their payment information on Audible's "Check Out" page. (*Id.*)  The top of that page states in large, bold font, **"You're in the home stretch for your 30-day, free trial!"** (*Id.* (screenshot of the "Check Out" page) (emphasis in original).[2])  To process the transaction, customers must click a button at the bottom of the page labeled "Try for $0.00." (Compl. ¶ 41.) Immediately above that button is a short paragraph, in a font the same size as the text requesting information such as the customer's name and credit card number, which reads in its entirety:  "By clicking 'Try for $0.00,' you agree to our Conditions Of Use and Amazon's Privacy Notice and permit Audible to charge your default card or another card on file.  Membership continues until cancelled for $14.95/mo. + taxes.  Cancel anytime

---

[2] (*See also* Buckley Decl. ¶ 2, Ex. 1 (Dkt. # 22-2) (higher-resolution image of the "Check Out page).)

via Account Details." (*Id.* (emphasis in original).)  The phrases "Conditions Of Use" and

"Privacy Notice" appear as blue hyperlinks, meaning a customer who wants to review the

"complete Audible Subscription offer terms" before beginning their free trial must hover

over "Conditions Of Use" and click the hyperlink, which directs them to a different page.

(*Id.* ¶¶ 41, 52.)

After subscribing, the customer receives "an email confirming . . . the purchase."

(*Id.* ¶ 57.)  Plaintiffs allege this confirmation email does not describe Audible's

"cancellation policy and how to cancel the Audible Subscription" or "the length of the

Audible Subscription as required by the ARL." (*Id.*)  Plaintiffs do not, however, quote

the emails in or attach them to their complaint or opposition brief.  (*See generally id.*;

Resp.)

**B.    Plaintiff Renee Viveros**

Ms. Viveros is a California resident who signed up for an Audible subscription

"on a gift trial basis" in January 2020.  (Compl. ¶ 62.)  Ms. Viveros "provided her Billing

Information directly to" Audible at the time she signed up.  (*Id.*)  She wanted to cancel

her subscription around December 2021, but she could not locate an "'exclusively online'

cancellation feature," so she called Audible's customer service for assistance.  (*Id.* ¶ 66.)

After speaking with a customer service representative, Ms. Viveros believed "she would

lose all of her downloaded audiobooks" if she cancelled, so she elected to pause her

subscription for three months.  (*Id.*)  Her subscription resumed in March 2022, and she

has remained an Audible subscriber "through the present." (*Id.* ¶¶ 65-66.)  Plaintiffs

allege that, had Ms. Viveros "been fully informed of Defendant's Audible Subscription

offer terms, . . . she would not have been enrolled into the Audible Subscription in or

around January 2020." (*Id.* ¶ 67.)  Plaintiffs also allege that "Ms. Viveros would have

cancelled her Audible Subscription in December 2021" had Audible "fully disclosed

its . . . cancellation policies and procedures." (*Id.*)  Ms. Viveros "has yet been unable to

effectuate the cancellation of her Audible Subscription," "continues to be charged"

(Resp. at 3), and, according to Plaintiffs, "remains at risk of further harm resulting from

Defendant's continued non-compliance with the ARL" (Compl. ¶ 68).

## C.    Plaintiff Christine Bias

Ms. Bias also subscribed to Audible "on a gift trial basis" "while residing in

California." (Compl. ¶ 71.)  She did so in May 2022, signing up through her "existing

Amazon Account" and receiving "a one-month free credit." (*Id.*)  Ms. Bias clicked

through the "Check Out" page to complete her subscription, and Audible "sent her an

email confirming her order." (*Id.* ¶¶ 72-73.)  Plaintiffs allege, however, that Audible did

not disclose to her the required terms of the subscription offer or Audible's cancellation

policy and that Ms. Bias was "completely unaware that . . . she was engaging in an

automatic renewal of any kind." (*Id.* ¶ 72.)  After Ms. Bias's free trial expired, Audible

charged her $14.95 each month until she "cancel[ed] her Audible Subscription in or

around December 2022." (*Id.* ¶ 77.)  Plaintiffs allege that "Ms. Bias would not have

consented to her initial ordered [*sic*] nor would she have consented to the Audible

Subscription" had she "received the complete Audible Subscription offer terms in the

manner mandated by the ARL." (*Id.*)

//

1

### III.   ANALYSIS

2
Audible moves to dismiss Plaintiffs' entire complaint with prejudice pursuant to

3
Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).  (*See generally* Mot.; Reply.)

4
Audible argues that Plaintiffs' complaint must be dismissed under Rule 12(b)(6) because

5
Plaintiffs fail to state plausible claims for relief with respect to their UCL, CLRA,

6
conversion, and unjust enrichment claims.  (*See* Mot. at 5-16.)  Audible further argues

7
that the court should dismiss Plaintiffs' requests for restitution and injunctive relief

8
pursuant to Rule 12(b)(1) because Plaintiffs lack Article III standing to seek such relief.

9
(*See id.* at 17-18.)

10
The court begins by discussing Audible's arguments under Rule 12(b)(6).

11
**A.    Rule 12(b)(6) Failure to State a Claim**

12
Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint

13
upon the plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R.

14
Civ. P. 12(b)(6).  A Rule 12(b)(6) dismissal may "be based on the lack of a cognizable

15
legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

16
*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A plaintiff's

17
complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to

18
relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

19
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although the pleading standard

20
announced by Federal Rule of Civil Procedure 8 does not require "detailed factual

21
allegations," it demands more than "an unadorned, the-defendant-unlawfully-harmed-me

22
accusation."  *Id.* (requiring the plaintiff to "plead[] factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged"

(citing *Twombly*, 550 U.S. at 556)); *see also* Fed. R. Civ. P. 8(a)(2).

When considering a Rule 12(b)(6) motion, the court takes the well-pleaded factual

allegations as true and views such allegations in the light most favorable to the plaintiff.

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  The

court need not, however, accept as true a legal conclusion presented as a factual

allegation, *Iqbal*, 556 U.S. at 678, nor is the court required to accept as true "allegations

that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences,"

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "In the event

dismissal is warranted, it is generally without prejudice, unless it is clear the complaint

cannot be saved by any amendment."  *Masuda v. Citibank, N.A.*, 38 F. Supp. 3d 1130,

1133 (N.D. Cal. 2014) (citing *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005)).

Below, the court resolves the parties' dispute regarding the applicability of Rule

9(b)'s heightened pleading standard for claims sounding in fraud.  The court then

addresses the merits of Audible's motion to dismiss, examining Plaintiffs' UCL and

CLRA claims before turning to their conversion and unjust enrichment claims.

1.  Rule 9(b)'s Heightened Pleading Standard

Federal Rule of Civil Procedure 9(b) provides that, "[i]n alleging fraud or mistake,

a party must state with particularity the circumstances constituting fraud or mistake."

Fed. R. Civ. P. 9(b).  "The purpose of this rule is to ensure that defendants accused of the

conduct specified have adequate notice of what they are alleged to have done, so that they

may defend against the accusations."  *Concha v. London*, 62 F.3d 1493, 1502 (9th Cir.

1    1995).  To meet this standard, "[t]he complaint must specify such facts as the times,

2    dates, places, benefits received, and other details of the alleged fraudulent activity."  *In re*

3    *Finjan Holdings, Inc. Secs. Litig.*, 58 F.4th 1048, 1057 (9th Cir. 2023) (quoting

4    *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)).

5           Audible argues Plaintiffs' claims "are all subject to the heightened pleading

6    requirements of Rule 9(b)" because their "claims sound in fraud."  (Mot. at 6.)  As

7    Audible points out, the Ninth Circuit has "specifically ruled that Rule 9(b)'s heightened

8    pleading standards apply to claims for violations of the CLRA and UCL."  *Kearns v.*

9    *Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp.*

10   *USA*, 317 F.3d 1097, 1102-05 (9th Cir. 2003)).  The Ninth Circuit has determined that,

11   "where fraud is not a necessary element of a claim" but the plaintiff "allege[s] a unified

12   course of fraudulent conduct" that forms "the basis of [the plaintiff's] claim," "the claim

13   is said to be 'grounded in fraud' . . . and the pleading of that claim as a whole must

14   satisfy the particularity requirement of Rule 9(b)."  *Vess*, 317 F.3d at 1103-04.

15          Plaintiffs respond that Rule 9(b)'s heightened pleading requirements do not apply

16   because their "claims are premised on Defendant's *unlawful* practices, not fraud."  (Resp.

17   at 5 (emphasis in original).)  The court is not persuaded.  "Where an 'unlawful' claim

18   sounds in fraud, it too must meet Rule 9(b)'s pleading standards."  *Aerojet Rocketdyne,*

19   *Inc. v. Glob. Aerospace, Inc.*, No. 2:17-cv-01515-KJM-AC, 2020 WL 3893395, at *6

20   (E.D. Cal. July 10, 2020) (citing *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074,

21   1094 (N.D. Cal. 2017)).  "Fraud can be averred by specifically alleging fraud, or by

22   //

alleging acts that necessarily constitute fraud (even if the word 'fraud' is not used)."
*Vess*, 317 F.3d at 1105.

Here, although Plaintiffs insist that their claims are premised on unlawful, not fraudulent, conduct (Resp. at 5), they allege that Audible (1) acted "knowingly, willfully, and with oppression, fraud, and/or malice" (Compl. ¶ 115); (2) deployed "an artifice devised . . . to lure thousands of consumers[,] bilking them for unauthorized and unwanted monthly fees" (*id.* ¶ 29); and (3) engaged in "acts, omissions, nondisclosures, . . . misleading statements" and "misrepresentations" that were "intended to deceive Plaintiffs and the Class" (*id.* ¶¶ 102, 122, 124).  These allegations sound in fraud and are therefore subject to Rule 9(b).  *See Aerojet*, 2020 WL 3893395, at *3 (finding that Rule 9(b) applied to "the entirety of [the plaintiff's] UCL claim" where the plaintiff alleged "malice, oppression and/or fraud"); *Durgan v. U-Haul Int'l Inc.*, No. CV-22-01565-PHX-MTL, 2023 U.S. Dist. LEXIS 131177 at *24, *28 (D. Ariz. July 27, 2023) (noting that the plaintiffs' argument that Rule 9(b) should not apply to the unfair prong "ignore[d] the words appearing in their [c]omplaint" that "constitute[d] de facto averments of fraud" (citing *Vess*, 317 F.3d at 1105)); *Chong v. Nestlé Waters N. Am., Inc.*, No. CV 19-10901-DMG (KSx), 2020 WL 7690175, at *5 (C.D. Cal. Nov. 30, 2020) (holding allegations of "misrepresentation" "sound[ed] in fraud").  Because all of Plaintiffs' claims are rooted in Audible's allegedly misleading and deceptive subscription practices, the court finds that Plaintiffs' "entire complaint . . . alleges a unified course of fraudulent conduct" and is therefore "grounded in fraud." *Vess*, 317 F.3d at 1108.

//

1    Accordingly, Rule 9(b)'s heightened pleading standard applies to the entirety of

2    Plaintiffs' complaint.

3         2.   Plaintiffs' UCL and CLRA Claims

4         Audible argues that Plaintiffs' UCL and CLRA claims, which are primarily

5    premised on Audible's alleged violations of the ARL, must be dismissed because:

6    (a) Plaintiffs lack statutory standing; (b) Plaintiffs fail to allege any violation of the ARL;

7    (c) Plaintiffs fail to allege any UCL or CLRA violations independent of the ARL; and

8    (d) Plaintiffs fail to allege reliance, causation, or injury.  (*See* Mot. at 6-16; Reply at 2-9.)

9    The court addresses each of these arguments in turn.

10         *a.  Statutory Standing*

11         The court concludes that Plaintiffs meet the statutory standing requirements with

12   respect to their UCL and CLRA claims based on Audible's alleged failure to adequately

13   disclose its automatic renewal terms, obtain Plaintiffs' affirmative consent to those terms,

14   or provide an appropriate acknowledgment.  Only Ms. Viveros, however, meets the

15   statutory standing requirements with respect to Plaintiffs' UCL and CLRA claims based

16   on Audible's alleged failure to provide an ARL-compliant subscription cancellation

17   mechanism.  Plaintiffs have not alleged facts sufficient to plausibly establish that Ms.

18   Bias has standing to bring such claims, and the court therefore DISMISSES her claims

19   concerning Audible's cancellation mechanism.

20         "The ARL doesn't include a private right of action . . . [b]ut consumers may bring

21   claims to enforce the ARL under California's Unfair Competition Law . . . and Consumer

22   Legal Remedies Act."  *Debono v. Cerebral Inc.*, No. 22-cv-03378-AGT, 2023 WL

1    300141, at *1 (N.D. Cal. Jan. 18, 2023).  Consequently, to bring claims premised on

2    violations of the ARL, "Plaintiffs must establish standing under [these] statutes." *Zeller*

3    *v. Optavia, LLC*, No. 22-cv-434-DMS-MSB, 2022 WL 17858032, at *9 (S.D. Cal. Dec.

4    22, 2022).  Standing under the UCL and CLRA requires a plaintiff "to (1) plead an

5    economic injury, and (2) show that the injury was caused by the challenged conduct."

6    *Rutter v. Apple Inc.*, No. 21-cv-04077-HSG, 2022 WL 1443336, at *4 (N.D. Cal. May 6,

7    2022).  An "economic injury" is one that results in "lost money or property." *Hinojos v.*

8    *Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (quoting *Kwikset Corp. v. Superior*

9    *Ct.*, 246 P.3d 877, 885 (Cal. 2011)).  But "[i]t is not enough that a plaintiff lost money; to

10    have standing, there must be a causal link between the unlawful practice and the loss."

11    *Mayron v. Google LLC*, 269 Cal. Rptr. 3d 86, 91 (Ct. App. 2020).

12        To establish causation, "the questions are twofold:  whether [the defendant's]

13    failure to adequately disclose that [its subscription] plan would automatically renew each

14    month caused [the] plaintiff to spend money he otherwise would not have spent; or

15    alternatively, whether [the defendant's] failure to provide an easy cancellation

16    mechanism caused [the] plaintiff to continue to spend money on a service he would have

17    discontinued." *Id.* at 92; *see also Morrell v. WW Int'l, Inc.*, 551 F. Supp. 3d 173, 184

18    (S.D.N.Y. 2021) (standing to bring UCL claims based on alleged ARL violations requires

19    that the "allegedly defective disclosures caused [the plaintiffs] to spend money on

20    services [they] never intended to purchase").  Thus, Plaintiffs can establish statutory

21    standing if they plead facts showing that they lost money and that their loss resulted from

22    either (1) Audible's failure to adequately disclose the automatic renewals, or

1   (2) Audible's failure to provide a compliant cancellation mechanism.  The court first

2   addresses statutory standing with respect to Plaintiffs' claims premised on Audible's

3   alleged failure to disclose, obtain consent to, or provide an acknowledgment of its

4   automatic renewal offer terms.  The court then considers whether Plaintiffs have standing

5   to bring their claims based on Audible's alleged failure to provide an adequate

6   cancellation mechanism under the ARL.

7        First, Plaintiffs' claims based on violations of Sections 17602(a)(1)-(3) stem from

8   allegations that they lost money due to Audible's failure to adequately disclose the

9   automatic renewals.  Plaintiffs allege that they "would not have subscribed

10  to . . . Audible" "[h]ad Defendant fully and clearly disclosed the terms associated with

11  their Audible Subscription" and, as a result, were "charged for Audible Products."

12  (Compl. ¶ 124.)  Ms. Viveros appears to have initially paid $14.95 to try Audible in

13  January 2020 (*id.* ¶ 62), but she "did not see . . . the automatic renewal offer terms" and

14  "would not have . . . enrolled" had she known that Audible would "charge her Billing

15  Information for the Audible Products associated with the Audible Subscription" (*id.*

16  ¶¶ 63, 67).  Similarly, "Ms. Bias was completely unaware that . . . she was engaging in an

17  automatic renewal of any kind" and "did not see . . . the automatic renewal offer terms

18  associated with the Audible Subscription."  (*Id.* ¶ 72.)  She "believed that her May 2022

19  order was a single, one-month, free transaction that would not automatically renew."  (*Id.*

20  ¶ 75.)

21        Plaintiffs' allegations plausibly demonstrate that, as a result of Audible's

22  "defective disclosures," they were "not aware that [their] subscription[s] would

1    automatically renew" and therefore "lost money" each month.  *Morrell*, 551 F. Supp. 3d

2    at 183.  Such allegations are sufficient to bring claims based on a defendant's failure to

3    fully disclose, obtain consent to, or provide an adequate acknowledgment of its automatic

4    renewal offer terms.  Plaintiffs allege that they suffered a monetary loss as a result of

5    Audible's deficient disclosures because they "would not have subscribed" had Audible

6    "fully and clearly disclosed the terms associated with their Audible Subscription."

7    (Compl. ¶ 124); *see also Zeller,* 2022 WL 17858032, at *10 (finding statutory standing

8    where plaintiffs alleged that they were "enrolled . . . without their knowledge" and

9    "would not have purchased any products . . . or enrolled in recurring purchases" "had

10   they known they were being enrolled").  Accordingly, Plaintiffs have standing to pursue

11   their UCL and CLRA claims concerning the sufficiency of Audible's automatic renewal

12   offer terms, Plaintiffs' consent to those terms, and the required acknowledgment.[3]

13         Second, Plaintiffs allege that they suffered injury cognizable under the UCL and

14   CLRA based on Audible's alleged failure "to provide an immediately available and

15   'exclusively online' cancellation mechanism."  (Compl. ¶ 43; *see also id.* ¶ 96 (alleging

16   that Audible failed to provide consumers an adequate means "to terminate the automatic

17

18         [3] Audible asserts that the court need not take Plaintiffs' allegations that Audible's
     conduct caused them harm as true due to several contradictions in the complaint.  (Mot. at 7-8.)
19   For example, Plaintiffs state that compliant disclosures would have prevented their enrollment
     but at the same time allege that they "did not see" the automatic renewal terms on the "Check
20   Out" page.  (Compl. ¶¶ 63, 72.)  At this early stage in the proceedings, however, the court must
     examine the complaint in the light most favorable to Plaintiffs.  *Wyler Summit P'ship*, 135 F.3d
21   at 661.  The fact that Plaintiffs did not see the renewal terms on the enrollment page does not
     mean that they would not have seen disclosures that were clearer or more conspicuous, as
22   Plaintiffs assert is required by the ARL.  *See Rutter*, 2022 WL 1443336, at *4-6 (concluding that
     the plaintiffs "met their burden of alleging the elements of standing" even though the complaint
     did "not allege that any of the [p]laintiffs even read the iCloud Terms and Conditions").

1   renewal . . . in violation of . . . § 17602(d)(1)(A)-(B)").)  Ms. Viveros "wanted to cancel

2   her Audible Subscription" in December 2021 but "did not know how to" do so because

3   Audible allegedly "did not provide that information to her."  (*Id.* ¶ 66.)  Plaintiffs allege

4   that Ms. Viveros was not "made aware of an 'exclusively online' cancellation mechanism

5   in December 2021" and, had she known how to do so, "would have cancelled . . . then

6   instead of incurring additional and unauthorized monthly charges."  (*Id.*)  These

7   allegations plausibly establish that Ms. Viveros suffered an economic harm, in the form

8   of monthly subscription fees, as a result of Audible's alleged failure to provide an

9   ARL-complaint cancellation mechanism.  Accordingly, Ms. Viveros has standing to

10   bring her claims challenging the adequacy of Audible's cancellation mechanism.

11        Plaintiffs, however, have not alleged facts plausibly demonstrating that Ms. Bias

12   suffered an economic loss due to the lack of an ARL-compliant cancellation mechanism,

13   and Ms. Bias therefore lacks standing to proceed with these claims.  Ms. Bias "was able

14   to cancel her Audible Subscription online" in December 2022 after "learn[ing] that her

15   initial order . . . automatically renew[ed]."  (*Id.* ¶¶ 76-77.)  Plaintiffs do not allege that

16   Ms. Bias incurred any economic losses as a result of an allegedly deficient cancellation

17   process.  (*See id.* ¶ 77 ("[A]lthough she was able to cancel her Audible Subscription[,]

18   . . . Ms. Bias was not provided with a one-step 'prominently located' cancellation button

19   or link . . . .").)  Although Ms. Bias alleges that she "spent much time and energy

20   searching for . . . [the] cancellation button" (*id.* ¶ 76), Plaintiffs' allegations of harm fall

21   short of the statutory requirements, which demand "an 'economic injury,'" *Rutter*, 2022

22   WL 1443336, at *4.

In sum, the court concludes that Plaintiffs have alleged sufficient facts to "plead an economic injury" and "show that the injury was caused by the challenged conduct" with respect to their claims concerning Audible's disclosures, Plaintiffs' consent to the offer terms, and the acknowledgment. *Rutter*, 2022 WL 1443336, at *4. Furthermore, Plaintiffs have alleged sufficient facts for Ms. Viveros to pursue claims concerning Audible's cancellation mechanism. Plaintiffs have not, however, alleged sufficient facts to establish that Ms. Bias has standing to bring UCL and CLRA claims concerning the cancellation mechanism.

The court therefore DISMISSES Ms. Bias's UCL and CLRA claims brought under Section 17602(d) for lack of standing.

      *b.  ARL Violations*

Plaintiffs allege that Audible violated the ARL in four discrete ways: (1) by failing to fully disclose the complete Audible subscription offer terms, *see* Cal. Bus. & Prof. Code § 17602(a)(1); (2) by failing to obtain Plaintiffs' affirmative consent to those terms, *see id.* § 17602(a)(2); (3) by failing to provide an adequate acknowledgment of the subscription offer terms, *see id.* § 17602(a)(3); and (4) by failing to provide an adequate cancellation process, *see id.* § 17602(d). Audible argues that the court must dismiss Plaintiffs' UCL and CLRA claims because Plaintiffs have failed to allege facts demonstrating any violation of the ARL. The court addresses these arguments in turn.

//

//

//

i.   Automatic Renewal Offer Terms

Pursuant to ARL Section 17602(a)(1), ARL-compliant "[a]utomatic renewal offer terms" must make "the following clear and conspicuous disclosures," as defined by Section 17601(b):

> (1) That the subscription or purchasing agreement will continue until the consumer cancels.
> (2) The description of the cancellation policy that applies to the offer.
> (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.
> (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.
> (5) The minimum purchase obligation, if any.

*Id.* § 17601(b).  To comply with the statute, businesses must present these "terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity . . . to the request for consent to the offer." *Id.* § 17602(a)(1).  If the offer "includes a free gift or trial," it must "include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial." *Id.*  The statute defines a "clear and conspicuous" disclosure as one "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." *Id.* § 17601(c).  Audible argues that Plaintiffs fail to state any UCL or CLRA claims based

//

on a violation of Section 17602(a)(1) because its enrollment page "plainly satisfies those requirements."  (Mot. at 9.)  The court agrees.

Audible's renewal offer on the "Check Out" page includes all of the required clear and conspicuous disclosures.  The disclosures required by ARL Sections 17601(b)(1) and (3)-(5) appear in the only underlined text on Audible's enrollment page:  the language above the "Try for $0.00" button stating that "<u>Membership continues until cancelled for $14.95/mo. + taxes.  Cancel anytime via Account Details</u>."  (Compl. ¶ 41 (emphasis in original).)  This language makes clear (1) that subscribers must cancel to terminate the membership; (2) the amount of each recurring monthly charge:  $14.95 plus taxes; (3) that the membership is continuous until the subscriber cancels; and (4) that there is no minimum purchase obligation, as subscribers may "[c]ancel anytime" during the free trial.  (Compl. ¶ 41.)  The underlined text satisfies Section 17601(c)'s "clear and conspicuous" requirement because it appears in a "contrasting type[ or] font . . . to the surrounding text of the same size."  *See* Cal. Bus. & Prof. Code § 17601(c).  Several disclosures are reiterated in a box in the upper left of the "Check Out" page, including the amount of each monthly charge, that the charges begin after 30 days, and that there are "[n]o commitments" and a subscriber may "[c]ancel anytime."  (Compl. ¶ 41); *see* Cal. Bus. & Prof. Code § 17601(c) (stating that a disclosure is "clear and conspicuous" if it is "set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language").

The court also concludes that Audible's description of its cancellation policy is sufficient under ARL Section 17601(b)(1).  At least one court has held that disclosures of

1    cancellation policies under ARL Section 17601(b)(1) are adequate where the defendant's

2    notice "provide[s] information about how and when [the plaintiff] could cancel, with

3    hyperlinks to the relevant contact information." *Hall v. Time*, No. SACV 19-01153-

4    CJC(ADSx), 2020 WL 2303088, at *4 (C.D. Cal. Mar. 13, 2020), *aff'd*, 857 F. App'x

5    385 (9th Cir. 2021).  Here, the "Check Out" page informs the subscriber that they may

6    "[c]ancel anytime" by visiting "Account Details," and the paragraph above this language

7    includes a blue hyperlink to Audible's "Conditions Of Use," which, according to

8    Plaintiffs, include Audible's complete offer terms.  (Compl. ¶¶ 41-42, 52.)  These

9    disclosures satisfy the ARL's requirement that renewal offer terms clearly and

10   conspicuously disclose the cancellation policy.  Moreover, Plaintiffs' reliance on *Lopez v.*

11   *Stages of Beauty, LLC*, 307 F. Supp. 3d 1058 (S.D. Cal. Feb. 9, 2018) is misplaced.

12   (Resp. at 10.)  In *Lopez*, "the only information regarding cancellation" in the disclosure

13   instructed subscribers "to call a particular phone number" and failed to mention that "the

14   subscriber . . . must call that phone number at least one day prior to . . . the next monthly"

15   installment.  307 F. Supp. 3d at 1071.  Here, in contrast, Audible's disclosure informs

16   users that they may cancel anytime online through the Account Details portion of their

17   profile, and that is exactly what Ms. Bias did.  (*See* Compl. ¶¶ 41, 77.)

18         In sum, Plaintiffs do not plausibly allege that Audible failed to clearly and

19   conspicuously disclose its automatic renewal offer terms in violation of Section

20   17602(a)(1).  Plaintiffs' allegations fall short of satisfying the requirements of Rule 8(a)

21   and Rule 9(b) in light of the clear and conspicuous disclosures on Audible's enrollment

22   //

1  page.  The court therefore DISMISSES Plaintiffs' UCL and CLRA claims based on

2  violations of Section 17602(a)(1) related to Audible's automatic renewal offer terms.

3          ii.  Affirmative Consent

4          Section 17602(a)(2) of the ARL prohibits companies from "[c]harg[ing] the

5  consumer's credit or debit card . . . for an automatic renewal or continuous service

6  without first obtaining the consumer's affirmative consent to the agreement containing

7  the automatic renewal offer terms."  Cal. Bus. & Prof. Code § 17602(a)(2).  Plaintiffs

8  argue that "affirmative consent" requires something akin to "a separate checkbox for the

9  automatic renewal."  (Resp. at 14.)  The court disagrees.  Affirmative consent requires

10 that "[d]efendants conspicuously disclose[] their renewal polic[ies] in plain language."

11 *Hall*, 2020 WL 2303088, at *4.  It does not, however, require a separate checkbox

12 indicating consent to the automatic renewal terms.  *See id.*; *see also* Cal. Bus. & Prof.

13 Code § 17602(a)(2) (making no reference to the need for a checkbox or other means to

14 indicate affirmative consent separate from the ordering process).  In *Hall*, the district

15 court held that the "[p]laintiff affirmatively consented to the agreement containing [the

16 automatic renewal] terms by entering her payment information and submitting her order

17 after receiving notice of those terms."  2020 WL 2303088, at *4.  The Ninth Circuit

18 affirmed, rejecting the plaintiff's argument that Section 17602(a)(2) requires "a

19 consumer's affirmative consent to the automatic renewal offer terms, separate from and

20 in addition to 'the agreement containing [such] automatic renewal offer terms.'"  *Hall v.

21 Time, Inc.*, 857 F. App'x 385, 386 (9th Cir. 2021); *accord Walkingeagle v. Google LLC*,

22 No. 3:22-cv-00763-MO, 2023 WL 3981334, at *5 (D. Or. June 12, 2023) (interpreting

1  nearly identical language in Oregon's ARL and holding that "affirmative consent" only

2  requires that the "consumer [be] presented with the automatic renewal terms in a clear

3  and conspicuous manner before having the option to start the trial").  In particular, the

4  Ninth Circuit described the plaintiff's argument that the ARL requires "a consumer's

5  affirmative consent to the automatic renewal terms specifically," rather than the

6  agreement in general, as "extra-textual" and in contravention to "California's principles

7  of statutory interpretation."  *Hall*, 857 F. App'x at 386-87.

8         Here, the court has already concluded that Audible satisfied its disclosure

9  obligations.  (*See supra* § (III)(A)(2)(b)(i).)  Thus, Plaintiffs affirmatively consented to

10  "the agreement containing the automatic renewal offer terms" when they visited the

11  "Check Out" page, entered their billing information, and clicked the "Try for $0.00"

12  button.  *Hall*, 2020 WL 2303088, at *4.  Indeed, Plaintiffs themselves expressly allege

13  that "Defendant's 'Check Out' page . . . requests consent to the automatically renewing

14  Audible Subscriptions."  (Compl. ¶ 54.)  Thus, the court concludes that Audible obtained

15  Plaintiffs' affirmative consent as required by ARL Section 17602(a)(2).

16         To support their position to the contrary, Plaintiffs cite several unpublished

17  California Superior Court cases.[4]  (*See* Resp. at 14-15.)  All three of those orders,

18  however, represent the courts' entry of final judgments and injunctions pursuant to

19  stipulations entered into by the State of California and the defendants in those cases.  (*See*

20

21  ────────────────────

22         [4] All three such cases are unpublished California Superior Court orders, which carry
minimal persuasive value and cannot be "cited or relied upon" in California courts.  *See Lebrilla
v. Farmers Grp., Inc.*, 16 Cal. Rptr. 3d 25, 31 (Ct. App. 2004); *see also* Cal. R. Ct. 8.1115(a).

1    Solomon Decl. (Dkt. # 25) ¶ 3, Exs. 2-4.)  None of those orders cite or purport to

2    interpret Section 17602(b).  (*See generally id.*)  Plaintiffs also cite the Southern District

3    of California's decision in *Turnier v. Bed Bath & Beyond Inc.*, 517 F. Supp. 3d 1132,

4    1140 (S.D. Cal. 2021), asserting that "the court in *Turnier* rejected the same argument

5    Defendant makes here."  (Resp. at 15.)  Plaintiffs, however, mischaracterize *Turnier* by

6    quoting a portion of the district court's discussion concerning Section 17602(a)(1) while

7    omitting the court's holding that there were "insufficient factual allegations to show

8    Defendant did not comply with" Section 17602(a)(2)'s affirmative consent requirement.

9    517 F. Supp. 3d at 1140.

10          Accordingly, the court DISMISSES Plaintiffs' UCL and CLRA claims based on

11   violations of ARL Section 17602(a)(2) related to affirmative consent.

12                      iii. Required Acknowledgment

13          ARL Section 17602(a)(3) makes it unlawful to "[f]ail to provide an

14   acknowledgment that includes the automatic renewal offer terms or continuous service

15   offer terms, cancellation policy, and information regarding how to cancel in a manner

16   that is capable of being retained by the consumer."  Cal. Bus. & Prof. Code

17   § 17602(a)(3).  "If the automatic renewal offer or continuous service offer includes a free

18   gift or trial, the business shall also disclose in the acknowledgment how to cancel, and

19   allow the consumer to cancel, the automatic renewal or continuous service before the

20   consumer pays for the goods or services."  *Id.*  Section 17602(a)(3)'s acknowledgment

21   requirement may be fulfilled "prior to the completion of the initial order" or "after

22   completion of the initial order."  *See id.* § 17602(f)(1).

1        Plaintiffs focus their argument on the confirmation emails Audible sends after

2   customers complete their subscription purchase.  (Resp. at 17; *see* Compl. ¶ 57.)  In

3   particular, Plaintiffs allege that Audible's confirmation emails fail to comply with Section

4   17602(a)(3) because they do not "provide the complete Audible Subscription offer terms,

5   cancellation policy, and information regarding cancellation policies in a manner that is

6   capable of being retained by the consumer."  (Compl. ¶ 59; *see also id.* ¶ 64 ("Ms.

7   Viveros's Confirmation Email did not provide the complete automatic renewal terms that

8   applied to the Audible Subscription in a manner that included a full description of

9   Defendant's cancellation policy, how Ms. Viveros can cancel her Audible Subscription,

10  or the precise length of Defendant's Audible Subscription renewal term.").)  Plaintiffs do

11  not, however, provide screenshots of the emails, quote the emails, or otherwise describe

12  the contents of the emails.  The court concludes that Plaintiffs' allegations fall short of

13  satisfying Rule 9(b), which "requires particularity," *Iqbal*, 556 U.S. at 686, and Rule

14  8(a)(2), which "demands more than an unadorned, the-defendant-unlawfully-harmed-me

15  accusation" consisting of "labels of conclusions," *id.* at 678 (quoting *Twombly*, 550 U.S.

16  at 555).

17        Because Plaintiffs' allegations concerning Audible's confirmation emails "tender[]

18  'naked assertion[s]' devoid of 'further factual enhancement,'" *id.* (quoting *Twombly*, 550

19  U.S. at 557), the court DISMISSES Plaintiffs' UCL and CLRA claims based on

20  violations of ARL Section 17602(a)(3).

21  //

22  //

1              iv. Sufficiency of Audible's Cancellation Process

2       Because Ms. Bias lacks standing to challenge the sufficiency of Audible's

3   cancellation mechanism, the court's analysis is limited to evaluating Ms. Viveros's

4   allegations.  The court concludes that Ms. Viveros fails to state a plausible claim for

5   relief.

6       Section 17602(d)(1) of the ARL requires that businesses "allow a consumer to

7   terminate the automatic renewal or continuous service exclusively online" and to

8   "provide a method of termination that is online in the form of either" (A) "[a]

9   prominently located direct link or button which may be located within either a customer

10  account or profile," or (B) "[b]y an immediately accessible termination email formatted

11  and provided by the business that a consumer can send to the business without additional

12  information."  Cal. Bus. & Prof. Code § 17602(d)(1)(A)-(B).  Importantly, Section

13  17602(d) went into effect on July 1, 2022.  Ms. Viveros does not allege a plausible

14  violation of Section 17602(d) because, as Audible points out, she "alleges only that she

15  tried to cancel her membership a single time in *December 2021*."  (Mot. at 13 (citing

16  Compl. ¶ 66) (emphasis in original)); *see also Hall*, 2020 WL 2303088, at *5 (holding a

17  claim brought under a portion of the ARL that "was not added to the [statute] until *after*

18  the parties executed the agreement . . . fail[ed] as a matter of law" (emphasis in original)).

19  Plaintiffs' complaint is devoid of any factual allegations suggesting that Ms. Viveros has

20  attempted to cancel her membership since Section 17602(d) took effect.  (*See* Compl.

21  ¶¶ 62-68 (alleging facts relating to Ms. Viveros's experience with Audible).)  The court

22  also agrees with Audible that Ms. Viveros has not alleged any violation of the ARL as it

ORDER - 23

1   existed when she allegedly tried to cancel her membership in 2021.  (*See* Mot. at 13.)

2   Accordingly, the court concludes that Ms. Viveros has failed to allege facts sufficient to

3   state a plausible claim for relief concerning Audible's cancellation mechanism and

4   DISMISSES Ms. Viveros's UCL and CLRA claims based on violations of ARL Section

5   17602(d).

6   　　　　　　　　*c.   UCL or CLRA Violations Independent of the ARL*

7   　　　　Audible next seeks dismissal of Plaintiffs' UCL and CLRA claims to the extent

8   they are premised on conduct independent of the ARL.  (Mot. at 14-15.)  Audible argues

9   that Plaintiffs allege no facts to support their allegations that Audible engaged in various

10  misrepresentations, false representations, and unlawful practices beyond the facts

11  underlying Plaintiffs' claims based on the ARL.  (*Id.* at 14 (quoting Compl. ¶¶ 99, 122).)

12  　　　　Plaintiffs do not respond to this argument.  (*See generally* Resp.)  Thus, they have

13  conceded Audible's point.  *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 888

14  (9th Cir. 2010) ("A plaintiff who makes a claim . . . in his complaint, but fails to raise the

15  issue in response to a defendant's motion to dismiss . . . has effectively abandoned his

16  claim, and cannot raise it on appeal." (quoting *Walsh v. Nev. Dept' of Human Res.*, 471

17  F.3d 1033, 1037 (9th Cir. 2006))); *see also Greenawalt v. Ricketts*, 943 F.2d 1020, 1027

18  (9th Cir. 1991) (noting that a "failure to argue the issue" results in "conce[ssion]").

19  Accordingly, the court DISMISSES Plaintiffs' UCL and CLRA claims based on conduct

20  independent of Audible's alleged violations of the ARL.

21  //

22  //

1      3.  <u>Plaintiffs' Conversion and Unjust Enrichment Claims</u>

2      Audible argues that "Plaintiffs' claims for conversion and 'unjust

3  enrichment/restitution' are duplicative of their ARL-predicated claims and fail for the

4  same reasons." (Mot. at 16; *see also* Compl. ¶¶ 110, 130.)  Plaintiffs confirm that their

5  conversion and unjust enrichment/restitution claims are based on Audible's alleged

6  violations of the ARL and provide no other bases for these claims.  (Resp. at 20.)

7      Because the court concludes that Plaintiffs have not adequately alleged any

8  violations of the ARL, Plaintiffs' claims for conversion and unjust enrichment/restitution

9  are DISMISSED.

10  **B.**    **Standing to Seek Restitution and Injunctive Relief**

11      Because the court dismisses all of Plaintiffs' claims pursuant to Rule 12(b)(6), the

12  court need not consider Audible's argument that, "[p]ursuant to Rule 12(b)(1), the [c]ourt

13  should dismiss Plaintiffs' claims for restitution and injunctive relief for lack of

14  subject-matter jurisdiction because Plaintiffs have no standing." (Mot. at 17.)

15  Accordingly, the court DENIES Audible's motion to dismiss Plaintiffs' claims for

16  restitution and injunctive relief as moot.

17  **C.**    **Leave to Amend**

18      On a Rule 12(b)(6) motion, "a district court should grant leave to amend even if no

19  request to amend the pleading was made, unless it determines that the pleading could not

20  possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal.*

21  *Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).  Where "amendment would be

22  //

1    futile," the "district court does not err in denying leave to amend." *DeSoto v. Yellow*

2    *Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

3         Plaintiffs ask the court to grant them leave to amend their complaint, but they fail

4    to identify the additional facts they would plead or otherwise explain why the court

5    should grant leave to amend.  (Resp. at 25.)  The court GRANTS in part and DENIES in

6    part Plaintiffs' request for leave to amend.

7         The court concludes that amendment of Plaintiffs' UCL and CLRA claims based

8    on ARL Sections 17602(a)(1)-(2), as well as any alleged violations of the UCL or CLRA

9    independent of the ARL, would be futile for three reasons.  First, Audible's enrollment

10   page contains the required automatic renewal offer terms in clear and conspicuous text.

11   (*See supra* § (III)(A)(2)(b)(i).)  Plaintiffs allege that they both reviewed pages that were

12   "substantively the same as the image" the court reviewed, and thus they cannot allege

13   new and different facts that would overcome dismissal.  (Compl. ¶¶ 63, 72.)  Second,

14   Plaintiffs' affirmative consent argument relies on an "extra-textual" reading of the ARL,

15   which the court declines to adopt.  *See Hall*, 857 F. App'x at 386.  The statute merely

16   requires that Audible conspicuously disclose its renewal policy in plain language before a

17   customer subscribes, and the "Check Out" page Plaintiffs visited does just that.  (*See*

18   *supra* § (III)(A)(2)(b)(ii).)  Third, by failing to respond to Audible's argument that any

19   alleged UCL or CLRA violations independent of their ARL-predicated claims fail to state

20   a claim, Plaintiffs have conceded the issue.  (*See supra* § (III)(A)(2)(c).)  Therefore, the

21   court DENIES Plaintiffs leave to amend these claims.

22   //

It is possible, however, that Plaintiffs could cure their UCL and CLRA claims based on ARL Sections 17602(a)(3) and 17602(d).  For example, Plaintiffs might be able to allege facts sufficient to state a plausible claim that Audible's confirmation email failed to "include[] the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel," and that Plaintiffs suffered harm as a result in violation of Section 17602(a)(3).  Cal. Bus. & Prof. Code § 17602(a)(3).  Plaintiffs may also be able to plead facts sufficient to suggest that Ms. Bias and Ms. Viveros suffered economic losses as a result of Audible's cancellation mechanism.  Because Plaintiffs may be able to cure the deficiencies in their UCL and CLRA claims based on violations of ARL Sections 17602(a)(3) and 17602(d), the court GRANTS Plaintiffs leave to amend these claims.

## IV.   CONCLUSION

For the foregoing reasons, the court GRANTS Audible's motion to dismiss (Dkt. # 22).  The court DISMISSES Plaintiffs' UCL and CLRA claims based on violations of ARL Sections 17602(a)(1)-(2) and any UCL and CLRA claims arising independently of the ARL with prejudice and without leave to amend.  The court DISMISSES Plaintiffs' UCL and CLRA claims based on violations of ARL Sections 17602(a)(3) and 17602(d) without prejudice and with leave to amend.  To the extent Plaintiffs' conversion and unjust enrichment claims are based on violations of ARL Sections 17602(a)(1)-(2), they are DISMISSED with prejudice and without leave to amend; to the extent such claims are based on violations of ARL Sections 17602(a)(3) and 17602(d), the court GRANTS Plaintiffs leave to amend these claims.  Plaintiffs may amend their complaint by no later

1 than **November 10, 2023**.  The court warns Plaintiffs that failure to timely file an

2 amended complaint that remedies the deficiencies identified above will result in the

3 dismissal of their entire complaint with prejudice.

4      Dated this 20th day of October, 2023.

5

6                                                JAMES L. ROBART
                                                United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 28